12-3514-cr
United States v. McLaurin

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: June 18, 2013          Decided: October 3, 2013)

Docket No. 12-3514-cr

───────────────────────────

UNITED STATES OF AMERICA,

*Appellee*,

− v. −

DAVID C. MCLAURIN,

*Appellant*.

───────────────────────────

Before: CALABRESI, CABRANES, and B.D. PARKER, *Circuit Judges*.

David McLaurin appeals from an order of the United States District Court for the District of Vermont imposing as a condition of supervised release a program of sex offender treatment that may include penile plethysmography testing. McLaurin claims that the condition is unreasonably intrusive and unrelated to the permissible goals of sentencing. We conclude that penile plethysmography testing is unduly intrusive and bears insufficient relation to correctional or medical treatment, the protection of the public, or deterrence of crime, and that the district court's decision to impose this condition was an abuse of discretion. We therefore VACATE the challenged condition and REMAND to the district court for further proceedings consistent with this opinion.

WILLIAM B. DARROW (Gregory L. Waples, *on the brief*), of counsel for Tristram J. Coffin, United States Attorney for the District of Vermont, *for Appellee*.

STEVEN L. BARTH (Michael L. Desautels, *on the brief*), Federal Public Defenders, Burlington, VT, *for Appellant*.

───────────────────────────

CALABRESI and B.D. PARKER[1], *Circuit Judges*:

David McLaurin, a convicted sex offender, was required by federal law to register any change in his address. He failed to do so and, following his guilty plea, was sentenced in the United States District Court for the District of Vermont to fifteen months' imprisonment and five years of supervised release. As a condition of his release, McLaurin was required to "participate in an approved program of sex offender evaluation and treatment, which may include . . . plethysmograph examinations, as directed by the probation officer." Judgment, *United States v. McLaurin*, No. 11 Cr. 113 (WKS), Dkt. No. 28 (D. Vt. Aug. 22, 2012), J. App. 9.

This examination involves the use of a device know as a plethysmograph which is attached to the subject's penis. In some situations, the subject apparently may be required, prior to the start of the test, to masturbate so that the machine can be "properly" calibrated. The subject is then required to view pornographic images or videos while the device monitors blood flow to the penis and measures the extent of any erection that the subject has. The size of the erection is, we are told, of interest to government officials because it ostensibly correlates with the extent to which the subject continues to be aroused by the pornographic images.

McLaurin objected to this requirement as unnecessary, invasive, and unrelated to the sentencing factors specified in 18 U.S.C. § 3553(a) and therefore impermissible as a discretionary condition of supervised release. *See* 18 U.S.C. § 3583(d)(1). The district court nonetheless imposed the requirement without reference to the statutory goals of supervised release or to any expected benefits to the public or to McLaurin. McLaurin now appeals.

---

[1] This opinion is co-authored by two members of the three-judge panel, and Judge Cabranes joins the opinion in full.

We hold that this extraordinarily invasive condition is unjustified, is not reasonably related to the statutory goals of sentencing, and violates McLaurin's right to substantive due process. We therefore vacate the condition.

**BACKGROUND**

McLaurin, an Alabama resident, was accused in 2001 of taking photographs of his thirteen-year-old daughter with her breasts exposed. His daughter reported to authorities that she had requested the photo shoot to help in her modeling career. McLaurin pleaded guilty to one count of producing child pornography in violation of Alabama law and was sentenced to ten years' imprisonment, most of it suspended. In 2008, he pleaded guilty to two counts of failing to satisfy Alabama's sex offender registration requirements, both apparently for the same conduct of moving from one Alabama county to another and registering the move in neither.

The federal Sex Offender Registration and Notification Act (SORNA) required McLaurin to "register, and keep the registration current, in each jurisdiction" where he lived. *See* 42 U.S.C. § 16913. In 2011, McLaurin obtained employment at the Putney Inn in Vermont, and he notified Alabama authorities that he was moving to Vermont and informed them of his new address in Putney. Vermont authorities contacted McLaurin in Putney and instructed him to fill out paperwork for the Vermont sex offender registry, but he failed to do so. Later in 2011, he lost his job in Vermont and returned to Alabama. In September 2011, McLaurin was indicted in Vermont for violating SORNA, and, in October 2011, was arrested in Alabama and returned to Vermont.

In April 2012, McLaurin pleaded guilty to one count of violating SORNA. At his sentencing, the district court noted that, in its experience, the case was unique among sex offender registration cases because McLaurin had not attempted to hide his whereabouts but merely failed to complete the required paperwork. Although the district court found that

3

McLaurin was "unlikely to reoffend again," it nevertheless sentenced him to fifteen months in prison and five years of supervised release. As one of the conditions of supervised release, the probation office recommended that McLaurin participate in a program of sex offender treatment, "which may include . . . plethysmograph examinations, as directed by the probation officer." Presentence Report Disclosure, J. App. 25. Characterizing the condition as "standard," the district court imposed it over McLaurin's objection. Sentencing Tr. at 34, J. App. 22. The judge observed in a generalized way that plethysmographic testing requirements are "important conditions in regard to SORNA cases and sex offender registration" and "are relevant to diagnosis and evaluation in the future," but otherwise made no findings—and certainly no specific findings—about the efficacy of this condition, or about why it was called for by the statutory sentencing factors or by the Sentencing Guidelines.

Penile plethysmography is a procedure that lasts two to three hours and "involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses." *United States v. Weber*, 451 F.3d 552, 554, 563 (9th Cir. 2006) (internal quotation marks omitted). The Government disputes whether, as others have described, the test requires a subject to masturbate to establish a baseline for measurement. *See id.* at 571 (Noonan, *J.*, concurring); Appellee Supp. Letter, Dkt. No. 64. The procedure was "developed by Czech psychiatrist Kurt Freund as a means to study sexual deviance," and it was "at one time used by the Czechoslovakian government to identify and 'cure' homosexuals." *Weber*, 451 F.3d

4

at 562 (citing David M. Friedman, A Mind of Its Own: A Cultural History of the Penis 232 (2001)).[2] Whether the device was "successful" in this regard is not reflected in the record.

## STANDARD OF REVIEW

"Generally, we review conditions of supervised release for abuse of discretion," *United States v. Green*, 618 F.3d 120, 122 (2d Cir. 2010), as "[a] district court retains wide latitude in imposing conditions of supervised release," *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010) (internal quotation marks omitted). Nevertheless, "[w]hen a challenge to a condition of supervised release presents an issue of law, we review the imposition of that condition *de novo*, bearing in mind that any error of law necessarily constitutes an abuse of discretion." *United States v. MacMillen*, 544 F.3d 71, 74-75 (2d Cir. 2008). Moreover, we will "carefully scrutinize unusual and severe conditions." *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002) (internal quotation marks omitted).

## DISCUSSION

A person, even if convicted of a crime, retains his humanity. He also retains his right to substantive due process, even if it is sharply diminished in many respects. *See United States v. Myers*, 426 F.3d 117, 125-26 & n.8 (2d Cir. 2005). Substantive due process prohibits the government from invading personal immunities that are "implicit in the concept of ordered liberty" and "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Rochin v. California*, 342 U.S. 165, 169, 172 (1952) (internal quotation marks omitted); *see also Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934); *Palko v. Connecticut*, 302 U.S. 319, 325 (1937).

---

[2] The Government informs us that other district court judges in the District of Vermont have imposed plethysmography conditions in the past. District court judges elsewhere in the Second Circuit have not recently imposed any such condition. *See* Appellee Supp. Letter, Dkt. No. 64. The probation office in Vermont has ceased recommending the procedure. *See id.*

As we have previously said of mental health "treatment" involving penile plethysmography, "[w]e think there can be no serious doubt that the liberty interests implicated here are of a high order." *Bailey v. Pataki*, 708 F.3d 391, 402 (2d Cir. 2013); *see also Weber*, 451 F.3d at 563 (holding that plethysmography "implicates a particularly significant liberty interest"); *Harrington v. Almy*, 977 F.2d 37, 44 (1st Cir. 1992) ("A reasonable finder of fact could conclude that requiring the plethysmograph involves a substantive due process violation."). The importance of the liberty interests at stake is especially clear since, as the Ninth Circuit has observed, "[p]lethysmograph testing not only encompasses a physical intrusion but a mental one, involving not only a measure of the subject's genitalia but a probing of his innermost thoughts as well." *Weber*, 451 F.3d at 562-63.

The condition of supervised release at issue is a sufficiently serious invasion of liberty such that it could be justified only if it is narrowly tailored to serve a compelling government interest. Because the Government has proffered no such justification, we agree with Judge Noonan of the Ninth Circuit that, even when dealing with convicted felons, "[t]here is a line at which the government must stop. Penile plethysmography testing crosses it." *Weber*, 451 F.3d at 571 (Noonan, *J.*, concurring).

The Sentencing Guidelines (U.S.S.G.) permit sentencing judges to impose conditions of supervised release:

> to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

U.S.S.G. 5D1.3(b); *accord* 18 U.S.C. § 3583(d)(2); *id.* § 3553(a). A sentencing court may impose conditions of supervised release so long as they are "reasonably related to any one or more of the specified factors." *United States v. Abrar*, 58 F.3d 43, 46 (2d Cir. 1995).

We have explained that "when a fundamental liberty interest is implicated by a sentencing condition, we must first consider the sentencing goal to which the condition relates, and whether the record establishes its reasonableness. We must then consider whether it represents a greater deprivation of liberty than is necessary to achieve that goal." *Myers*, 426 F.3d at 126; *see also Harrington*, 977 F.2d at 44 (holding that "nonroutine manipulative intrusions on bodily integrity will be subject to heightened scrutiny to determine, *inter alia*, whether there are less intrusive alternatives available"). Although the overarching inquiry is as to reasonableness, where, as here, "the liberty interest at stake is fundamental, a deprivation of that liberty is 'reasonably necessary' only if the deprivation is narrowly tailored to serve a compelling government interest." *Myers*, 426 F.3d at 125-26; *accord United States v. Reeves*, 591 F.3d 77, 82-83 (2d Cir. 2010).

Accordingly, we must determine whether plethysmography is reasonably related to the statutory purposes of sentencing as they relate to McLaurin, including "deterrence," the "protect[ion] [of] the public," and the need "to provide the defendant with needed . . . medical care[] or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a); *accord id.* § 3583(d)(2). If the condition is reasonably related to any of these goals, we must determine whether plethysmography is a "greater deprivation of liberty than is reasonably necessary" to achieve a sentencing goal. *Id.*

7

## A. The Need to Provide the Defendant with Correctional Treatment

The Government first asserts that plethysmography is a useful form of correctional treatment for sex offenders who have an unusually high recidivism rate. The record before us is, however, devoid of support for this assertion. At sentencing, the district court concluded that McLaurin was unlikely to reoffend. The Government is unable to say, except with vague generalities, how the use of the device amounts to "treatment," and is unable to point to any expected, much less tangible, benefits to McLaurin from the testing. In other words, the Government has made no showing that this exceedingly intrusive procedure has any therapeutic benefit, and none is apparent to us. The Ninth Circuit has noted that "the accuracy and reliability of penile plethysmograph testing have been severely questioned." *Weber*, 451 F.3d at 564. In particular, "[a] predominant concern with plethysmograph testing is its susceptibility to manipulation via faking." *Id.* at 564. The Ninth Circuit also noted criticism that penile plethysmography lacks "uniform administration and scoring guidelines." *Id.* at 565 (internal quotation marks omitted).

But even assuming that the procedure is "reliable," we fail to see how it would confer any value as correctional treatment. To begin with, the procedure inflicts the obviously substantial humiliation of having the size and rigidity of one's penis measured and monitored by the government under the threat of reincarceration for a failure to fully cooperate. And even if the machine could accurately monitor and record the extent or intensity of a convict's prurient interests (a proposition about which we have serious doubts), the goal of correctional treatment during supervised release is properly directed at conduct, not at daydreaming. *See Stanley v. Georgia*, 394 U.S. 557, 565 (1969) ("Our whole constitutional heritage rebels at the thought of

giving government the power to control men's minds."); *cf. Kansas v. Crane*, 534 U.S. 407, 412 (2002).

Suffice it to say that in this case, the Government made no showing to the district court that plethysmography is reliable or therapeutically beneficial, and the district court made no findings on those points. Instead, the district court justified the imposition of the plethysmography condition by characterizing it as "standard." Sentencing Tr. at 34, J. App. 22. Before imposing a "standard" condition as intrusive and demeaning as this one, a district court must, at a minimum, make findings, sufficiently informative and defendant-specific for appellate review, that the test is therapeutically beneficial, that its benefits substantially outweigh any costs to the subject's dignity, and that no less intrusive alternative exists. Moreover, in determining whether penile plethysmography is narrowly tailored to serve a compelling government interest, the district court must also make findings (also sufficiently informative and defendant-specific for appellate review) that the technique can be, and has been, assessed for reliability and efficacy, that it has been subject to peer review, and that it has been generally accepted in the scientific community. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

## B. The Need to Protect the Public

The Government next argues that the test helps to "protect the public," citing literature suggesting a relationship between failing penile plethysmography tests and recidivism. The Government, however, cannot point to any consensus on the reliability of plethysmographic data. And even if we were to consider the purported correlation between increasing penis size and recidivism to be strong, the correlation would be irrelevant. The testing could not help to protect the public unless the results were used to justify further detention or more restrictive conditions of release. But that could not occur because McLaurin had already received a fixed term of

9

incarceration followed by a fixed term of supervised release, neither of which could be altered by a poor test score.

Our criminal laws are intended to punish a mental state only when it accompanies an unlawful act. *See Stanley*, 394 U.S. at 565. But unacted-upon prurient sexual thoughts, just like "a defendant's abstract beliefs, however obnoxious to most people, may not be taken into consideration by a sentencing judge." *Wisconsin v. Mitchell*, 508 U.S. 476, 485-86 (1993) (citing *Dawson v. Delaware*, 503 U.S. 159 (1992)); *see also Lawrence v. Texas*, 539 U.S. 558, 562 (2003) ("Liberty presumes an autonomy of self that includes freedom of thought . . . .").

We see a clear distinction between penis measurement and other conditions of supervised release which are reasonably calculated to protect the public. These would include restrictions on where sex offenders may live, their interactions with children, and their access to pornographic material. But we see no reasonable connection between fluctuating penis size and public protection—certainly none strong enough to survive the careful scrutiny that we give to unusual or severe conditions of supervised release.

### C.     The Need to Deter Crime

The Government further asserts that the condition is reasonably related to all of the § 3553(a) factors, including deterrence. *See* Appellee Br. 13. The Government, however, makes no distinct argument that McLaurin's plethysmographic condition would be justified as a deterrent measure. In any event, we also find it odd that, to deter a person from committing sexual crimes, the Government would use a procedure designed to arouse and excite a person with depictions of sexual conduct closely related to the sexual crime of conviction. In short, the Government offers no compelling justification for plethysmography in the name of deterring crime.

**D. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

A condition of supervised release must also be "reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant." The charge to which McLaurin pleaded guilty was failure to register as a sex offender in Vermont in 2011. As the district court noted, McLaurin did not hide his whereabouts; he purposefully informed sex offender registry officials of his address in Vermont. His crime was failing to complete paperwork—albeit important paperwork. His criminal history includes one other instance when he failed to register his move between two Alabama counties. McLaurin's only conviction for an actual sexual offense was for photographing his daughter topless in 2001. Ten years passed between that offense and the instant failure to register, and McLaurin has not been convicted or accused of any substantively sexual crime in that period. We fail to see any reasonable connection between this defendant, his conviction more than a decade ago, his failure to fill out paperwork, and the government-mandated measurement of his penis.

In the end, we hold that the plethysmographic condition does not bear adequate relation to the statutory goals of sentencing to outweigh the harm it inflicts, that it involves a greater deprivation of liberty than is reasonably necessary to serve any of those statutory goals, and that it may not, consistent with substantive due process, be imposed on McLaurin.

**CONCLUSION**

We vacate the challenged condition of supervised release and remand to the district court for further proceedings consistent with this opinion.