WILLIAMS, Senior Circuit Judge,
dissenting:
My colleagues recognize that a sentencing court “must consider” any “non-frivolous arguments for mitigation” that a defendant presents. Maj. Op. at 88 (citing United States v. Bigley, 786 F.3d 11, 12, 14 (D.C. Cir. 2015)). But confronted with a record that fails to show such consideration, the majority is content with evidence that the judge spoke reasonably about the issues he did address. This accommodating test effectively eliminates the requirement of considering nonfrivolous arguments. Because the record offers no hint that the district court even listened to — let alone considered — two important arguments before it, I respectfully dissent.
The record shows the district court batting down several arguments for leniency, but these were government arguments, not Pyles’s. The prosecutor urged the district court to sentence below the bottom of the corrected Guidelines range (108-135 months). Sentencing Tr. at 4-5. (The plea agreement had stated a range of 78-97 months, having assumed the wrong criminal history category and left out a distribution enhancement.) The government joined Pyles in suggesting an intermediate range of 87-108 months, based on correcting the criminal history category but not applying the enhancement. See id. at 3-5, 15; Gov’t Sentencing Mem. at 2-3 (“Gov’t Mem.”). Both sides requested a sentence at the very bottom of the intermediate range — 87 months. See Sentencing Tr. at 4-5, 15; see also Gov’t Mem. at 2-3. Citing his own experience from having “handled these cases [ ] exclusively for a number of years,” the prosecutor enumerated reasons for leniency: the mistake in the agreement; “the relatively small amount of child pornography;” and the immediate cooperation on Pyles’s part. Sentencing Tr. at 4-6, 8. Given these mitigating circumstances, the prosecutor urged that the intermediate range of 87-108 was “where the guidelines are most appropriate.” Id. at 9.
The district court countered the prosecutor’s points. Id. at 4-10. We may assume that its dispatch of them was adequate. But that tells us nothing about the two separate arguments for a variance raised by Pyles’s counsel. As to these, the court uttered not the slightest acknowledge *95 ment. First, Pyles had been sexually abused and exposed to pornography as a child; counsel presented these events as a key source of his mental health problems, drug addiction, and criminal behavior, culminating in the current charges. See id. at 20-21; Defendant’s Sentencing Mem. at 14 (“Defendant’s Mem.”). Second, as the Sentencing Commission had acknowledged, the child pornography Guidelines are rife with enhancements for circumstances that almost invariably accompany a child pornography conviction, including Pyles’s (e.g., use of a computer, sadomasochistic images), thereby inflating the range and eliding meaningful distinctions of culpability. See Sentencing Tr. at 13-15, 19-20, 25; see also U.S. Sentencing Commission, Federal Child Pornography Offenses iii & n.14 (2012) (“Commission Report”); id. at 318 (“[EJnhancements that were intended to apply to only certain offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders.”).
Whenever defense counsel raised these contentions the district court moved on without discussing them or even signaling recognition; counsel would circle back to his variance request, but never succeeded in engaging the court’s focus. Before counsel had even finished his opening argument about the Guidelines’ inadequacies, see Sentencing Tr. at 13-15, the court interrupted, “Hold on,” and launched into discussions of the relative seriousness of Pyles’s two charges, of public safety, and of why probation (which no party had requested) was inappropriate, id. at 15-18. Counsel attempted to reorient the discussion, explaining how even the Sentencing Commission was “in doubt” over U.S.S.G. § 2G2.2 and how Pyles deserved a variance based on the traumatic abuse he had suffered. Id. at 19-21. Counsel then turned to the skepticism about Pyles’s possible rehabilitation that the court had expressed in colloquy with the government; he urged that with therapy, Pyles could “succe[ed].” Id. at 21-22. Instead of responding directly to Pyles’s two main arguments, the court launched into a denial of the possibility of therapy — there was, said the court, “no basis ... to believe that [Pyles] would engage in” sex offender treatment, id. at 22 — a denial that was, as we’ll soon see, a radical oversimplification of the record. Counsel responded to the court’s concern and then returned to the variance request, which he bolstered with the Sentencing Commission’s own statements and relevant Supreme Court precedents. Id. at 23-26. Signaling that it thought counsel had been talking for long enough, the court asked Pyles if he wished to speak. Id. at 26. The court ultimately sentenced Pyles to 132 months (eleven years), three months short of the corrected Guidelines maximum.
The record, including the district court’s oblique and in part mistaken comments, reflects no consideration of either of counsel’s “ ‘nonfrivolous reasons’ ... for an alternative sentence” — consideration required by our and the Supreme Court’s cases. See United States v. Locke, 664 F.3d 353, 357 (D.C. Cir. 2011) (quoting Rita v. United States, 551 U.S. 338, 356-57, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)). Until now, we have enforced this procedural requirement without hesitation. See Bigley, 786 F.3d at 14 (reversing below-Guidelines sentence for failure to consider nonfrivolous argument); see also United States v. McKeever, 824 F.3d 1113, 1125-26 (D.C. Cir. 2016) (remanding within-Guidelines sentence for failure to consider nonfrivolous argument). In dispensing with this requirement, or at best skating over its violation, the panel breaks from precedent.
Our disagreement begins with the standard of review. Pyles’s counsel raised his requests for leniency multiple times de *96 spite the court’s apparent unwillingness to hear them. But because counsel never objected that his repeated arguments had gone unheeded, my colleagues believe the error must be viewed through the plain error lens rather than abuse of discretion. Their decision embraces one side of an intra-circuit conflict while obscuring the other. They rely on Locke, where we said an objection was required to preserve a claim that nonfrivolous arguments went unconsidered. 664 F.3d at 356-57; accord United States v. Mack, 841 F.3d 514, 525 (D.C. Cir. 2016). But we had earlier held in indistinguishable circumstances that a defendant need only' “inform the [district] court ... of the ruling he wants the district court to make and the ground for so doing.” United States v. Tate, 630 F.3d 194, 197 (D.C. Cir. 2011) (quoting United States v. Rashad, 396 F.3d 398, 401 (D.C. Cir. 2005)); see also id. at 198 (“Having stated the facts and the law regarding the [sentencing argument] and having requested that the district court exercise its discretion ..., counsel preserved Tate’s ... claims of error and counsel was not obligated to object .... ”). Judges in the Third Circuit have rightly described our precedents on this issue as “internally inconsistent.” United States v. Flores-Mejia, 759 F.3d 253, 260 n.1 (3d Cir. 2014) (en banc) (Greenaway, Smith, Shwartz & Sloviter, JJ., dissenting).
My colleagues distinguish Tate with the observation that one of the claimed procedural errors involved a misstatement rather than an omission. Maj. Op. at 87-88. This fails twice. First, my colleagues offer no reason to find the difference meaningful for this issue. Second, Tate applied its no-need-to-object rule to another claimed error almost identical to the one in dispute here: that the sentencing judge “fail[ed] to appreciate” an argument to vary downward based on policy disagreement with the Guidelines. Tate, 630 F.3d at 199-200. The government asserted the necessity of a post-sentence objection, but we flatly rejected the idea. Id. at 197-98. We applied abuse of discretion review and affirmed the sentence because the judge had' in fact acknowledged the policy problems in the Guidelines and “recognized that it had discretion to vary.” Id. at 200.
Further, as applied in these circumstances, where counsel has repeatedly had his points brushed off, he might well feel that he’d look like an idiot, or be seen as trying to make the court look like an idiot, if he larded the record with the obvious point that he wished his arguments to be evaluated. See United States v. Lynn, 592 F.3d 572, 578-79 & n.3 (4th Cir. 2010) (reasoning that it would be a “drain on district-court time” to require post-sentence procedural objections and that “[b]y drawing arguments from § 3553 for a sentence different than the one ultimately imposed, an aggrieved party sufficiently ... preserves its claim”); see also United States v. Bonilla, 463 F.3d 1176, 1181 (11th Cir. 2006) (“The question of whether a district court” adequately explained its sentence “is reviewed de novo, even if the defendant did not object below”).
But of my disagreements with the majority, this one is the least consequential for Pyles: I would find error under even the more demanding standard; they, apparently, would find none even under the more lenient. Compare Maj. Op. at 93-94.
To establish plain error, a defendant must show (besides, of course, error): that the error was plain, which in its role as one of the “plain error” requirements “simply means clear,” United States v. Terrell, 696 F.3d 1257, 1260 (D.C. Cir. 2012) (internal quotation marks omitted); that it “af-fectfed] substantial rights,” Mack, 841 F.3d at 522; and that it “seriously af *97 fect[ed] the fairness, integrity, or public reputation of judicial proceedings,” id.
An error is clear “if it contradicts circuit or Supreme Court precedent,” In re Sealed Case, 573 F.3d 844, 851 (D.C. Cir. 2009), as of “the time of appellate review,” United States v. Bostick, 791 F.3d 127, 149 (D.C. Cir. 2015) (citing Henderson v. United States, 568 U.S. 266, 133 S.Ct. 1121, 1129, 185 L.Ed.2d 85 (2013)). And the majority recognizes that it has been clear since shortly after United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), that a district court “must consider” any “nonfrivolous argument for a sentence below the relevant guideline range.” Bigley, 786 F.3d at 14; see also Rita, 551 U.S. at 356-357, 127 S.Ct. 2456; Locke, 664 F.3d at 357. Straddling both the “error” and the “clear” elements, the panel finds no “obvious” error. Maj. Op. at 86, 88.
In fact Pyles’s two reasons for variance were more than compelling enough to qualify for the modest protections identified in Rita, Locke, and Bigley — a point I do not take my colleagues to dispute. Each argument was appropriately rooted in the sentencing factors of 18 U.S.C. § 3553(a), each was relevant to Pyles’s circumstances, and neither was addressed by the district court.
Counsel properly couched his client’s sexual abuse within the first § 3553(a) factor, which directs attention to “the history and characteristics of the defendant.” See Defendant’s Mem. at 14-15; see also Sentencing Tr. at 20. The relevance of childhood sexual abuse in child pornography sentencing is obvious. Such an experience seems sure to produce at a minimum deep moral confusion. Afraid, unable or unsure of how to resist, the child is put in a hopeless bind. His sense of self-worth and agency, his ability to hew to moral norms, are all eroded. See Kimberly A. Tyler, Social and Emotional Outcomes of Childhood Sexual Abuse: A Review of Recent Research, 7 Aggression & Violent Behavior 567, 568-78 (2002) (summarizing research on behavioral sequelae in child sex abuse victims, finding increased suicide, substance abuse, gang involvement, PTSD, and other behavioral problems); see also Abdulaziz Al Odhayani et al., Behavioural Consequences of Child Abuse, 59 Canadian Family Physician 831, 831 (Aug. 2013) (similar); Am. College of Obstetricians & Gynecologists, Adult Manifestations of Childhood Sexual Abuse, Committee Op. No. 498, at 1-2 (Aug. 2011) (similar).
The Sentencing Commission reports that childhood sufferings of sexual abuse are rare among child pornography defendants. “The vast majority of non-production offenders,” i.e., ones not producing child pornography, “reported [no] ... history of childhood sexual abuse.” Commission Report at 164. Perhaps because the combination is relatively rare, § 2G2.2 takes no explicit account of this characteristic, thus making its consideration as part of § 3553(a) all the more important. And because the Supreme Court has eliminated any requirement that mitigating circumstances be “extraordinary,” Gall v. United States, 552 U.S. 38, 47, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), childhood abuse may justify a below-range sentence even if not “exceptional,” United States v. Simpson, 346 Fed.Appx. 10, 15 (6th Cir. 2009). Although the weight to be given to such personal history is up to the district court (subject to reasonableness review), it plainly represents a nonfrivolous mitigation argument calling for consideration. Without some sign of consideration, there would be no basis for thinking — other than blind faith — that the court really weighed the issues at stake.
Also calling for the district court’s consideration was Pyles’s other argument— *98 that “as a result of recent changes in the computer and Internet technologies that typical non-production offenders use,” § 2G2.2 “no longer adequately distinguishes among offenders based on their degrees of culpability.” Defendant’s Mem. at 8 (quoting Commission Report at ii). Pyles’s counsel pointed out that “many of the[ ] enhancements” to Pyles’s sentencing range under § 2G2.2 “recur in each and every” case, thereby “fail[ing] to distinguish as to more culpable, more dangerous offenders.” Sentencing Tr. at 14; see also Defendant’s Mem. at 12-13 (indicating that the enhancements lead to sentences “greater than necessary,” contrary to § 3553(a) (quoting § 3553(a))). He argued in particular, see Defendant’s Mem. at 8-9, that almost all child pornography defendants receive the enhancements Pyles had received for “use of a computer,” § 2G2.2(b)(6); for “material involving] a prepubescent minor,” § 2G2.2(b)(2); for material “portraying] [ ] sadistic or masochistic conduct,” § 2G2.2(b)(4); and for volume of images, § 2G2.2(b)(7) — each of Pyles’s four videos counted as 75 images, see § 2G2.2 cmt. 6(B)(ii). These enhancements collectively increased Pyles’s range by 12 levels. See Defendant’s Mem. at 4. This panoply of enhancements applies so frequently that it serves to conflate offenders rather than differentiate among them. See, e.g., United States v. Dorvee, 616 F.3d 174, 184-87 (2d Cir. 2010).
Pyles’s critique of § 2G2.2 overwhelmingly overlaps with the Sentencing Commission’s own misgivings. See Defendant’s Mem. at 8 (citing Commission Report at iii, xi, 209, 323). In the Commission’s judgment, the enhancements “relating to computer usage and the type and volume of images ... now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability.” Commission Report at iii & n.14. The Commission has warned that these enhancements are “outdated and disproportionate,” id. at xxi, 321, 331, and has recommended amending them, id. at xviii-xxi. See Defendant’s Mem. at 8-11 (citing Commission Report throughout). As we said of a similar request for departure from the crack cocaine Guidelines, “[I]t remains of great importance that, in its recommendations, the Commission candidly and forthrightly exposed the weaknesses and failings of its Guideline .... ” United States v. Pickett, 475 F.3d 1347, 1355 (D.C. Cir. 2007). Indeed in Pickett we reversed the district court for failing to consider how the Commission’s own thinking supported a departure request. See id. at 1356.
The requirement of “consideration,” clearly applicable to both Pyles’s points, is unlike other sentencing procedures, such as calculating the range, in that it is a wholly internal process. With no way of knowing a district court’s synaptic firings, the law necessarily looks for external manifestations. “The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties’ arguments and has a reasoned basis for exercising his own legal decisionmaking authority.” Rita, 551 U.S. at 356, 127 S.Ct. 2456 (emphasis added).' Ordinarily, “[d]o-ing so will not necessarily require lengthy explanation,” but when a litigant argues, as Pyles has, “that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way,” the judge must “say [ ] more.” Id. at 356-57, 127 S.Ct. 2456. Rita’s phrasing makes clear that consideration of nonfrivo-lous claims and reasoned decision making are independent though interlocking requirements.
Even for a court confronting “straightforward, conceptually simple arguments” as in Rita itself, id. at 356, 127 S.Ct. 2456, the Court gave .no license to disregard *99 defense contentions. Instead it emphasized that the judge had “asked questions about each factor” Rita had given to support a variance and “summarized” those arguments on the record. Id. at 344-45, 127 S.Ct. 2456. The Court used these responses to infer that the judge had “listened to each argument” and “considered the supporting evidence.” Id. at 358, 127 S.Ct. 2456. Although the Court might have accepted just the summarizing or just the questions as adequate, Rita made clear that the record must show that the district court heard and understood the nonfrivo-lous argument. Without that minimum, there is nothing from which to infer genuine consideration.
The Court reiterated this stance in dictum in Gall, when it rejected the government’s argument that a lenient drug sentence was procedurally infirm: “It is true that the District Judge did not make specific references to the (unquestionably significant) health risks posed by ecstasy, but the prosecutor did not raise [those risks] at the sentencing hearing. Had the prosecutor raised the issue, specific discussion of the point might have been in order.” 552 U.S. at 53-54, 128 S.Ct. 586. Compare Maj. Op. at 91 (discussing unrelated point in Gall, 552 U.S. at 54, 128 S.Ct. 586, that a reviewing court can discern trial court consideration of a § 3553(a) factor — avoidance of unwarranted disparities — from a combination of the factor’s automatic inclusion in the calculation of the guideline and the trial court’s extended inquiry regarding the sentences given to the co-defendants in the case).
Starting with Locke, our cases have spoken of Rita’s inference in terms of a presumption. 664 F.3d at 358. But the substance of our requirement has been the same (until today). Just as Rita relied on the district court’s questioning and summarizing the defendant’s claims, we have asked if the district court has at least acknowledged the defendant’s nonfrivolous arguments on the record. See Bigley, 786 F.3d at 173 (sentencing law calls for district court to “respond[ ] to a defendant’s arguments”); see also Mack, 841 F.3d at 523. In Locke “the record ma[de] plain” this acknowledgment: of the two “arguments Locke claims it ignored,” the district court “engaged in an extended colloquy” on one and “explicitly acknowledged” the other. 664 F.3d at 358. With that bar met, then “so long as the judge provides a ‘reasoned basis for’ ” the sentence, “we generally presume that he adequately considered the arguments.” Id. (emphasis added) (quoting Rita, 551 U.S. at 356, 127 S.Ct. 2456). Thus Locke’s presumption of adequate consideration flowed from the quite specific acknowledgement of defendant’s claim; we didn’t create something from nothing, reasoned consideration from silence. What if the judge offers a “reasoned basis” for the sentence but fails to acknowledge the defendant’s argument? We reverse, as in Bigley. The principle seems straightforward: if “the sentencing judge fails to respond to a nonfrivolous argument, the presumption of adequate consideration is rebutted.” Mack, 841 F.3d at 523 (emphasis added).
My colleagues recoil from the words “respond” and “acknowledge” in Mack, Bigley, and Locke. Possibly they fear that “respond” could be taken to mean a compelling refutation of the defendant’s claims (a reading unsupported by our cases). But I cannot fathom the majority’s objection to “acknowledge,” a term that, if anything, understates the law’s demand. In McKeever we recognized that passing or obscure references cannot sustain an inference of consideration. There, a defendant had “clearly raised sentencing entrapment” as a reason for leniency. 824 F.3d at 1125. And, as we said, the judge’s statements showed that she “had an inkling of the *100 issue” and “was aware that police [not defendant] had brought the firearms.” Id. at 1117, 1126. But, because the court’s comments did not “expressly address[ ] the issue,” we could not discern whether the court “meant to reject” the argument or had simply “failed to address” it. Id. at 1125-26. Holding that the district court fell short of the requirements for Locke’s, presumption, we vacated and remanded the sentence. Id.
Thus we require actual acknowledgment: Delphic comments won’t suffice. But contrary to my colleagues’ protestations, this bar can be met without the court’s explicitly weighing the nonfrivolous argument. We recently took a sentencing court’s barebones acknowledgment, “[Y]ou all have strived to do the right thing during your period of incarceration,” and inferred from it a consideration of the strengths and weaknesses of the defendant’s rehabilitation claim. United States v. Hunter, 809 F.3d 677, 685 (D.C. Cir. 2016). And in United States v. Fry, where a defendant raised an argument similar to Pyles’s about the unreasonable enhancements in the child pornography guidelines, the district court’s response was skeletal but direct. 851 F.3d 1329, 1332-33 (D.C. Cir. 2017). It said that it would have found the conduct just as grave “even absent those enhancements,” and we took that as adequate to “confirm[ ]” that the court had considered the argument. Id. The district courts in Hunter and Fry did not say much about the nonfrivolous arguments, but we inferred that there was substance behind their words.
With those cases on one side and McKeever on the other, it is obvious where Pyles’s sentencing falls. The district court in McKeever manifested an “inkling” of the defendant’s argument, yet we remanded: the court here showed none. See 824 F.3d at 1117, 1126. Did the district court impose a Guidelines sentence because it disagreed with Pyles on the law, on the facts, on the weighing of the § 3553(a) factors? These questions cannot be answered from the record; as McKeever said, that deficiency has been a “clear” error in our circuit at least since Locke. Id. at 1126.
Even setting aside those clear precedents, the district court’s lack of acknowledgment is “plainly out of sync” with the basic requirements of sentencing, as evidenced by -the holdings of our fellow circuits. See United States v. Burroughs, 613 F.3d 233, 245 (D.C. Cir. 2010). These courts, from which the panel now splits, are all but unanimous in requiring-direct evidence of consideration. See, e.g., Flores-Mejia, 759 F.3d at 259 (sentencing court abused its discretion by replying to variance argument with only, “OK, thanks. Anything else?”); United States v. Temprano, 581 Fed.Appx. 803, 806-07 (11th Cir. 2014) (vacating sentence where judge “fail[ed] to give any explanation for his chosen sentences” and “gave no reason for rejecting Temperano’s request for a below-Guidelines sentence and the government’s 24-month sentence recommendation”); United States v. Emmett, 749 F.3d 817, 822 (9th Cir. 2014) (noting that “district courts must provide an ‘explanation,’ not merely consideration’ ” and vacating denial of request to terminate supervised release (quoting United States v. Trujillo, 713 F.3d 1003, 1010 (9th Cir. 2013)); United States v. Corsey, 723 F.3d 366, 377 (2d Cir. 2013) (relying on Rita to vacate sentence where, among other faults, the district “court never resolved appellants’ significant arguments” for a lower sentence even though it offered reasons for its decision); United States v. Wallace, 597 F.3d 794, 804-05 (6th Cir. 2010) (citing Rita and holding that “failure to even acknowledge Defendant’s argument” is sentencing plain error); Lynn, 592 F.3d at 585 (“Simply put, because there is no indication that the *101 district court considered the defendant’s nonfrivolous arguments prior to sentencing him, we must find error.”); United States v. Mondragon-Santiago, 564 F.3d 357, 363-64 & n.5 (5th Cir. 2009) (district court committed plain error when it “did not squarely address Mondragon-Santiago’s sentencing arguments” and “the court’s statement of reasons did not further illuminate its reasoning”); United States v. Miranda, 505 F.3d 785, 796 (7th Cir. 2007) (vacating sentence because district court’s remarks about defendant’s sanity did not show adequate consideration of defendant’s “specific arguments regarding the effect of his mental illness on sentencing”).
My colleagues see no problem. They dilute Rita’s requirement, saying that “[i]f a trial judge states a reasonable decision in support of sentencing and that decision obviously forecloses an objection raised by the defendant,” then we must be “very cautious” before finding an absence of adequate consideration. Maj. Op. at 91. Disregarding Rita’s careful note that the judge had “asked questions about” and “summarized” Rita’s arguments on the record, 551 U.S. at 344-45, 127 S.Ct. 2456, the majority invokes Rita for a much slacker idea: if the judge “finds that the circumstances do not warrant a below-Guidelines sentence,” we may infer consideration of each argument. Maj. Op. at 89. And this applies even though the reasoning offered lies within a framework hermetically sealed from defendant’s contentions. Silent disregard now stands in for the reasoned consideration required by Rita. Compare McKeever, 824 F.3d at 1117, 1126 (remanding despite evidence that district court had an “inkling” of counsel’s argument).
As we have never before accepted such a flaccid version of Rita, my colleagues are driven to rewrite our precedents. They say that the district court in Locke “did not address every mitigating argument offered by the defendant.” Maj. Op. at 88-89. But there we found that the court had specifically addressed “both arguments Locke claimed it ignored.” 664 F.3d at 358. The majority also leans on language in United States v. Borda, but in that case we determined that the unaddressed mitigation claim was “irrelevant” (i.e., frivolous) and did not demand any consideration. 848 F.3d 1044, 1072 (D.C. Cir. 2017). As for the critical passages in Mack, McKeever, Hunter, and Fry — not a word.
Finding no direct authority for their view, my colleagues rely on an analogy to our decisions that a judge need not acknowledge every § 3553(a) factor, reasoning that “[t]he same is true for mitigation arguments .... ” Maj. Op. at 91; see Locke, 664 F.3d at 358. True enough; just as we don’t ask courts to formulaically' recite inapposite § 3553(a) factors, we require consideration only of nonfrivolous arguments. My colleagues also omit our long-standing recognition, paralleling the rule on a defendant’s assertion of nonfrivo-lous objections, that “[w]hen a defendant has [ ] asserted the import of a particular § 3553(a) factor,” the sentencing court is required to address that factor. United States v. Simpson, 430 F.3d 1177, 1187 (D.C. Cir. 2005); accord United States v. Brinson-Scott, 714 F.3d 616, 627 (D.C. Cir. 2013) (“A sentencing court satisfies the requirements of the Sentencing Reform Act so long as it considers the section 3553(a) factors implicated by the defendant’s arguments.” (emphasis added)). So too here.
Though formulating what appears to be a zero-scrutiny principle, my colleagues also adopt a fallback position, saying that in fact the district court “responded” to Pyles. Maj. Op. at 92-93. First they note that Pyles made “six mitigation arguments” and that his appeal involves just *102 two, id. at 84-85, suggesting that the court adequately considered the others. But at sentencing Pyles voiced only two reasons for a downward variance — the two at issue here. His other arguments were either specifically couched not as a variance request, Sentencing Tr. at 12, or as responses to issues raised by the district court, e.g., id. at 21-22. In terms of nonfrivolous arguments for a downward variance, the district court was batting 0 not .667.
The majority also says that the district court “expressed skepticism towards,” labeled as “weak,” and “implicitly rejected” Pyles’s argument about § 2G2.2. Maj. Op. at 85-86, 91. As for the purported “skepticism,” my colleagues rely on district court comments discussing unrelated contentions made by government counsel before Pyles’s attorney even had a chance to speak. Id. at 85-86 (citing Sentencing Tr. at 9 (rejecting government’s argument that Pyles’s cooperation and small amount of child pornography merited a lower sentence)); see id. at 92-93. In some circumstances a court, already familiar with the sentencing briefs, might preemptively respond to a defendant’s oral argument. But the comments the majority cites, and the government arguments they rejected, had nothing to do with the points Pyles’s counsel would raise.
Read out of context, there is one point of seeming overlap, the prosecutor’s comment that sometimes the Guidelines might be too high, sometimes too low. Sentencing Tr. at 9. But the prosecutor’s point, evident in his immediately following statements and echoed in his brief, was that Pyles’s sentencing range (save for one enhancement) was appropriate, id., and that the judge shouldn’t attempt to disrupt § 2G2.2’s balancing act by “cherry-picking” among enhancements, Gov’t Mem. at 10-11. Where the prosecutor urged disregard of an enhancement (the one for distribution), it was on grounds of the parties’ having mistakenly omitted it in reaching the plea agreement, not on any policy dispute with the Guidelines. This was also the only enhancement that Pyles did not attack on policy grounds. The government’s arguments complemented but in no way coincided with Pyles’s.
As for purported responses to Pyles’s arguments, the majority describe the district court as having said that “criticisms of the child pornography guidelines were weak in this case.” Maj. Op. at 86. Unfortunately their paraphrase bears little relation to the colloquy it describes. Pyles’s counsel stated early on that the travel offense is considered to be “more horrific” than possession even though it has a lower aggregate offense level. Sentencing Tr. at 15. As counsel transitioned to his main point, the district court interrupted to say that people might “disagree” about the relative seriousness of each crime but that the court personally felt that the travel conduct is “impossible” to defend. Id. at 15-16. The court then doubled back, “But you could make an argument — certainly I’m not telling you you should. I mean, you can certainly make an argument that distributing] pornographic images of prepubescent children of a sadomasochistic nature over the internet is even more serious conduct than travelling interstate, per se.” Id. at 16 (emphasis added). Following that the court returned to its- agreement with Pyles’s counsel that the travel offense was “so awful.” Id. These comments — part concurrence, part off-the-cuff advice — offer no assessment of Pyles’s mitigation argument. To my colleagues though, this passage is laden with subtext. Later they claim that what the judge really meant here was that the “Guidelines enhancement for sadomasochistic images was appropriate.” Maj. Op. at 93. Again, the transcript speaks for itself.
*103 My colleagues’ evidence of implicit- consideration is no more apt. In a status conference four months before sentencing, the district court mentioned that it had spent “a ‘considerable amount of time’ reviewing” the case. Maj. Op. at 91 (quoting Status Conference Tr. at 3 (May 28, 2014)). I do not take that generality to be a serious answer to the question whether the court considered defendant’s arguments. At the same status conference, the court ordered a psychological examination to determine “[wjhether or not [Pyles] is a pedophile” — a diagnosis certainly relevant as yielding useful background information, but hardly a substitute for judicial consideration of Pyles’s mitigation arguments. Id. And my colleagues refer to the judge’s comment about getting his “glasses repaired so that he could read everything.” Maj. Op. at 91. Pity the defendant in the next ease whose judge mentions having just gotten a new hearing aid; shall we then find that the district court assiduously “listened to each argument”? Cf. Rita, 551 U.S. at 358, 127 S.Ct. 2456. None of these examples evince tacit rejection of Pyles’s § 2G2.2 argument, as opposed to simple disregard, let alone the basic acts of acknowledgment that were critical in Rita, Locke, Fry, and Hunter. Rather the majority’s point seems to be that any judge who read the briefs and sat through oral argument should have picked up on Pyles’s arguments. Maj. Op. at 91-93.1 agree: the district court should have, but the record offers no evidence that he did.
On the sexual abuse claim, the majority even concedes that the court made no acknowledgment. Id. at 93. But they insist that the judge must have read and considered it because the abuse featured prominently in multiple documents that crossed the court’s desk: the pre-sentence report; Pyles’s first sentencing memorandum; and the psychological evaluation. The majority puts particular emphasis on this last document, reasoning that because the judge ordered the evaluation, he must have considered everything in the ensuing report. But the district court ordered the evaluation not to investigate Pyles’s mitigation argument, but solely to learn “[wjhether or not [Pyles] is a pedophile.” Status Conference Tr. at 3. And at sentencing, its comments about the report were focused on potential recidivism, a matter linked to possible pedophilia. See, e.g., Sentencing Tr. at 9-10. The record thus confirms that the court’s interest in Pyles’s mental health was specific, not holistic; there is little in human experience meriting the majority’s assumption to the contrary. When you go to the emergency room for a broken ankle, you might well tune out the intake nurse’s advice about flu shots.'
Had the district court discredited Pyles’s abuse or rejected the § 2G2.2 arguments, the majority and I might well have deferred to those decisions. But rather than tackling Pyles’s arguments, the court seemed to assume that a downward variance would be inappropriate. It responded to the government’s request for leniency by saying, “Essentially, you’re asking for a variance of this Court downward. ... I’m hard-pressed to see how that could possibly be the case here,” Sentencing Tr. at 5, followed by, “I don’t know how a below-Guideline Range [ ] sentence could ever deter anyone from conduct of this nature,” id. at 6, and, “There’s no way this Court could ever consider a variance downward in this case.... [I]t’s not conceivable,” id. at 9. Having dismissed the government’s arguments for a shorter sentence, the court then asked Pyles for his “best argument for downward variance,” but it immediately cautioned that variance was “an extraordinary request.” Id. at 12. The district court’s labeling a downward variance “an extraordinary request” and dismissing it as “not conceivable,” id. at 9, *104 12, come close to conditioning a variance on “compelling reasons,” a condition that our court has found to be an improper “presumption that the Guidelines range is reasonable,” Terrell, 696 F.3d at 1262. Indeed, after Pyles’s arguments for a variance, the district court explicitly expressed its assumption that its choices were only between a Guidelines sentence and an upward variance. “[T]his is not a case where the low end of the Guideline Range ... is appropriate.... The challenge this Court has had to wrestle with is whether to vary upward.” Sentencing Tr. at 38.
From this record, the majority assembles various conclusory and often unsubstantiated statements and calls it reasoned decision making. See Maj. Op. at 85. But even apart from the failure to respond to defense counsel’s contentions, the district court’s discussion at sentencing qualifies as reasonable (if at all) only by the skin of its teeth. The court placed great weight on the need to protect the public, the need for deterrence, and the seriousness of the offense. Sentencing Tr. at 17, 33. It focused particularly on the images, noting that they “aren’t just obscene, but they involve prepubescent children and they involve sadomasochistic images on top of that,” id. at 32. And it stressed the interstate travel, which it saw as “demonstratefing] overwhelmingly a commitment to and desire to engage in sexual conduct with a minor,” even as it acknowledged that many trips of a length classifiable as interstate in the Washington metropolitan area would elsewhere be purely intrastate. Id. at 15-16. Despite repeatedly invoking the seriousness of the pornography offense, the court never even acknowledged that much of what the court found so serious, such as the type of images, is almost universal in child pornography cases. Commission Report at iii & n.14. Had the court openly grappled with this issue — explicitly put before it by defense counsel — we would be in a much better position to understand why it chose the sentence it did. See Bigley, 786 F.3d at 16.
The court also emphasized the psychological report, which it read as indicating that Pyles “does not think he needs” prison sex offender treatment, that Pyles minimized his offenses, and that Pyles “blam[ed] [his inclinations] on drug usage,” an excuse that the court rejected. Sentencing Tr. at 9-10; see id. at 11. On all these issues the court to a considerable degree distorted both the report and the defendant’s position. In criticizing defendant for purportedly blaming his drug addiction, the court disregarded Pyles’s argument that both his drug use and his criminal behavior followed directly from the larger issue — his childhood sexual abuse — which the court persisted in ignoring. See Defendant’s Mem. at 13-14. (Because the sex abuse led to Pyles’s criminal behavior as well as drug use, the majority appears ready to allow any district court comment about the drug use to double as a comment about the sex abuse. Maj. Op. at 93. Applying their reading consistently would lead to very curious results, such as the district court implying that child sexual abuse cannot be “a factor in a person’s desire to engage in pedophilia.” See Sentencing Tr. at 10 (discussing “drug usage”).)
The court’s repeated emphasis on Pyles’s unwillingness to undergo sex offender treatment was also misplaced. After the district court insisted that the report showed no “hope” of Pyles rehabilitating, even the prosecutor politely chided, “I’m not sure that the report makes it quite as clear that [Pyles] would not be amenable to treatment.” Id. at 10. The psychologist in fact emphasized that Pyles had participated willingly in the evaluation and suggested that Pyles’s reticence about sex offender treatment could be addressed *105 with therapy. The report concluded that Pyles would have a “low” risk of recidivism if he undertook both sex offender and substance abuse treatment but that successfully completing only one, or neither, would create, respectively, a moderate, or high, risk. Gov’t Supplemental Sentencing Mem. at 3. Although Pyles had expressed reticence only about sex offender treatment, the court seems to have assumed that Pyles would refuse both that and drug treatment, thus leading to the “high” risk outcome, or that failing sex offender treatment alone would create such a risk. See Sentencing Tr. at 11; see also id. at 16 (“He could be out there, once out of jail, posing the same risk”).
In his allocution Pyles himself explained that his initial misgivings about sex offender treatment stemmed from the prison program’s penile plethysmograph procedures, but said that after talking with others, he had decided to “participate in the sex offender treatment regardless.” Id. at 27. At the time of sentencing, therefore, Pyles had apparently withdrawn his misgivings on the sex therapy. Quite a few courts of appeals share those misgivings about plethysmography and have vacated post-release conditions making it mandatory. See United States v. McLaurin, 731 F.3d 258, 263-64 (2d Cir. 2013); see also United States v. Medina, 779 F.3d 55, 71 (1st Cir. 2015); United States v. Weber, 451 F.3d 552, 554 (9th Cir. 2006). So a degree of hesitance about such a procedure can hardly be held against a defendant, especially when in the end he accepts the psychologist’s recommendation to undergo therapy. See Sentencing Tr. at 27. As further evidence of his interest in therapy, Pyles asked the court (after sentence was announced) to recommend him for a Bureau of Prisons drug treatment program. Id. at 39.
Beyond the court’s unmoored discussion of the psychologist’s report, its oft-repeated concerns about recidivism appear to have been based more on intuition than information. See Dissent, supra, at 104-05. The Commission has compiled considerable data on the subject. A study of 610 defendants convicted of “non-production” child pornography offenses, tracked for an average of eight and a half years after release, yielded a 7.4% rate for “sexual recidivism” — encompassing 3.6% for “contact” offenses, 2.3% for new child pornography offenses, and 1.5% for “non-contact sex offenses involving obscenity or commercial sex.” Commission Report at 294-301. “General” recidivism of sex offenders, encompassing all crimes, is obviously higher but still in line with that of other defendants. Id. at 308-10; see also Matthew R. Duróse et al., Bureau of Justice Statistics, Recidivism of Prisoners Released in SO States in 2005: Patterns from 2005 to 2010, at 8 (2014) (sexual assault offenders’ recidivism lower than that of assault or robbery offenders). As one district court observed as part of an exhaustive analysis of the subject, “Recent research suggests that the recidivism rate of child pornography offenders may be low, with most child pornography viewers unlikely to engage in future sexual offenses.” United States v. R.V., 157 F.Supp.3d 207, 240 (E.D.N.Y. 2016).
These studies are not the end of the matter. Actual recidivism may be higher than known recidivism, given the undeire-porting of sex crimes. Commission Report at 295 & n.12. And general recidivism is somewhat higher for defendants whose criminal history category is (like Pyles’s) above I. Id. at 308-10. The court’s individualized assessment of the defendant is certainly relevant too, but here the person in the courtroom with possibly the best opportunity to aid in such assessment was the prosecutor, who had “handled these *106 cases [ ] exclusively for a, number of years” and argued consistently for a sentence below the corrected Guidelines range. Sentencing Tr. at 6.
Finally, as the majority repeatedly mentions, the court intended to cancel out the “huge break” that Pyles received through the government’s agreeing to a plea without a distribution charge, thereby sparing Pyles, as the judge saw it, the five-year mandatory minimum attached to distribution. Id. at 7; Maj. Op. at 85, 92-93, 93-94. In fact the lower end of the range that Pyles agreed to (78-97 months) was a year and a half more than the mandatory minimum, and the sentence Pyles eventually sought (87 months) was well beyond that minimum. Pyles was spared the mandatory minimum only in a nominal sense.
If the district court’s reasoning seems incomplete, there is good reason for that: the court never responded to two arguments that intersected with most of the issues in this case. The court clearly erred by not addressing Pyles arguments and leaving us with the type of incomplete record that Rita and its sequels in our and other circuits sought to prevent.
More generally, the majority’s new presumption cannot be reconciled with the goals of federal sentencing reform. As is well known, the Sentencing Reform Act sought to limit sentencing discrepancies arising from the predilections of individual judges. To the extent that the Act’s solution was mandatory Guidelines, it collapsed from constitutional infirmities, which the Supreme Court solved by removing the Guidelines’ mandatory character. Booker, 543 U.S. at 245, 125 S.Ct. 738. By upending the relationship between sentences and the Guidelines, Booker necessarily reset the dynamic between district and appellate courts. See Gall, 552 U.S. at 46, 128 S.Ct. 586 (“Our explanation of ‘reasonableness’ review in the Booker opinion made it pellu-cidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions.”). The Court read the statute as establishing review not only for substantive reasonableness but also for conformity to the procedural requirements of law — most obviously such matters as proper calculation of the Guidelines sentence but also “fail[ure] to consider the § 3553(a) factors” and “fail[ure] to adequately explain the chosen sentence.” Id. at 51, 128 S.Ct. 586. Flowing from that latter requirement is Rita’s more specific rule that the court “satisfy the appellate court that he has considered the parties’ arguments.” See Rita, 551 U.S. at 356, 127 S.Ct. 2456. As the Court has explained, Rita’s procedural check is needed “to promote the perception of fair sentencing.” Gall, 552 U.S. at 50, 128 S.Ct. 586. Indeed, one might add, the reality of fair sentencing.
“Although the federal system’s procedural rules establish [relatively] gentle[] checks on the sentencing court’s discretion ..., they nevertheless impose a series of requirements on sentencing courts that cabin the exercise of that discretion.” Peugh v. United States, — U.S.-, 133 S.Ct. 2072, 2084, 186 L.Ed.2d 84 (2013). The requirement to consider the § 3553(a) factors is procedural but it guides the substance of the judge’s reasoning; likewise the requirement to consider nonfrivolous arguments helps ensure that sentences are driven by context, not caprice. See generally Gall, 552 U.S. at 51, 128 S.Ct. 586 (procedural review is to precede reasonableness review). .
In contrast to this rigorous procedural review, the appellate courts’ post -Booker role in monitoring for substantive reasonableness has been inherently weak. See generally id. at 51-52, 128 S.Ct. 586. With a swarm of factors likely to be relevant, many of them involving subtle questions of *107 degree, reversal for unreasonableness would be likely only to replace a single judge’s weighing of imponderables with a three-judge panel’s weighing. Appellate intervention in such circumstances is unlikely to provide much guidance for lower courts and even more unlikely to develop useful rules of law. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). We recognized the comparative advantages of the two courts early in the post-Booker era, see United States v. Gardellini, 545 F.3d 1089, 1093 n.3 (D.C. Cir. 2008), and in the almost ten years since then we appear to have never found a sentence substantially unreasonable (apart from cases such as Pickett where the unreasonableness stemmed from an error of law).
With substantive discretion almost entirely in the hands of district courts, any useful role for the courts of appeals in “promot[ing] the perception of fair sentencing” lies in their enforcement of the statute’s procedural requirements. See Gall, 552 U.S. at 50, 128 S.Ct. 586. The panel’s readiness to gloss over a district court’s non-recognition of a serious argument for (relative) leniency goes far to abdicate that role and thus restore the status quo ante the Sentencing Reform Act: virtually untrammeled district court authority over sentences. Perhaps that outcome would be preferable on broad jurisprudential grounds, but it is not what Congress and the Supreme Court have wrought. The majority discards the basic procedural requirements and thus sacrifices the interests of consistency, coherency, and clarity of thought.
The majority’s new presumption is particularly ill-advised when dealing with a sentence derived from § 2G2.2, which exists in spite of the Commission’s judgment as to the sentence called for by the § 3553(a) factors. Though § 2G2.2 originated with the Commission, its content has been repeatedly diverted from the Commission’s reasoning by congressional mandates. See generally U.S. Sentencing Commission, The History of the Child Pornography Guidelines (Oct. 2009). And see United States v. Grober, 624 F.3d 592, 608 (3d Cir. 2010) (agreeing with district court comment that “to say that the final product is the result of Commission data, study, and expertise simply ignores the facts”). The court in Dorvee found that in view of these exercises of force majeure the Guideline was one “that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires.” 616 F.3d at 184. The Second Circuit has recently followed through on its warning in Dorvee, reversing a child pornography sentence for relying too heavily on § 2G2.2 and its “all-but-inherent” enhancements. United States v. Jenkins, 854 F.3d 181, 188-91 (2d Cir. 2017). This court need not go so far here, but Dorvee and Jenkins mark § 2G2.2 cases as among the least suitable for a new policy of indifference to the modest requirements of procedural regularity. Compare Rita, 551 U.S. at 350, 127 S.Ct. 2456 (presumption of reasonableness appropriate when judge’s finding and “Commission’s judgment” overlap).
[[Image here]]
The other elements of plain error are easily met here. The third element, that it “affected substantial rights,” requires “a reasonable likelihood that the error affected the outcome.” Terrell, 696 F.3d at 1263 (internal quotation marks omitted); see Burroughs, 613 F.3d at 245. The defendant’s burden of “showing prejudice” is “somewhat lighter in the sentencing context than for errors committed at trial.” Burroughs, 613 F.3d at 245 (internal quotation marks and alterations omitted). The *108 defendant “need not even demonstrate that it is ‘more likely than not’ that his sentence will change.” United States v. Williams, 358 F.3d 956, 966 (D.C. Cir. 2004). Because Pyles’s variance requests double as requests for a shorter within-range sentence, “[t]he question isn’t whether defendant’s prison term would have been drastically shorter — -just whether it was reasonably likely that the prison term would not have been as long.” In re Sealed Case, 573 F.3d at 852. Given the court’s omission here of any reference to two major contentions going to the just application of its discretion, and its troubling insistence that a downward variance was “not conceivable,” Sentencing Tr. at 9, there is a “reasonable probability that the court might not have imposed” the sentence “if it had fulfilled its obligation” to consider Pyles’s nonfrivolous arguments for a variance, Burroughs, 613 F.3d at 245 (quoting United States v. Perazza-Mercado, 553 F.3d 65, 78 (1st Cir. 2009)).
The final consideration for plain error is whether the procedural flaw “seriously affects the fairness, integrity, or public reputation of judicial proceedings.” United States v. Hunt, 843 F.3d 1022, 1029 (D.C. Cir. 2016) (alteration omitted). In the sentencing context, the first three plain error elements — an error that was clear and reasonably likely to have affected a prison term — all but establish the fourth. See Terrell, 696 F.3d at 1263. An inadequate record seriously affects the judicial process, because “a reviewing court and the public cannot adequately evaluate the judge’s sentence selection.” Bigley, 786 F.3d at 16; accord United States v. Akhigbe, 642 F.3d 1078, 1087 (D.C. Cir. 2011) (explaining that a “failure to explain adequately the sentence” meets the “seriously affecting” element when it “precludes appellate review” (brackets omitted)). That is certainly the case here. Having found that all four elements of plain error are present, I would vacate and remand for the district court to consider Pyles’s arguments.