# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 12, 2016      Decided November 15, 2016

No. 15-3051

UNITED STATES OF AMERICA,
APPELLEE

v.

KEVIN EUGENE MACK,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cr-00150-1)

———

*John A. Briley, Jr.* argued the cause and filed the briefs for appellant.

*Karen P. Seifert*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief was *Elizabeth Trosman*, Assistant U.S. Attorney. *Lauren R. Bates*, Assistant U.S. Attorney, entered an appearance.

Before: BROWN, *Circuit Judge*, and EDWARDS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: On May 23, 2013, appellant Kevin Mack was charged by indictment with two counts of distribution of a mixture or substance containing phencyclidine (PCP), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iv), (b)(1)(C), for twice selling PCP to an undercover police officer. On July 21, 2014, appellant pled guilty to one count of the indictment. On July 28, 2015, the District Court imposed a 77-month term of incarceration and 36 months of supervised release. In his appeal to this court, appellant contends that the District Court erred by failing to consider his arguments for a time-served sentence. In particular, appellant claims that the trial judge ignored his "sentencing manipulation" argument – *i.e.*, that the undercover officer arranged the second PCP sale solely to increase his sentence. Appellant also argues that the District Court erred in calculating the quantity of PCP attributable to him.

At the time of sentencing, a district court judge is required to state in open court the reasons for choosing a particular sentence. 18 U.S.C. § 3553(c) (2012). This requirement has been construed to mean that the trial judge must address all "nonfrivolous reasons" for an alternative sentence asserted by a defendant and provide a "reasoned basis" in open court for any sentencing decision. *United States v. Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011) (quoting *Rita v. United States*, 551 U.S. 338, 356–57 (2007)).

The trial judge in this case expressly rejected appellant's claim that he had been "induced" by police officers to engage in unlawful conduct in an order denying appellant's motion to dismiss the indictment. But the trial judge did not explicitly address the issue of "sentencing manipulation" when he rendered his sentencing decision. However, after explaining the reasons for his sentencing decision, the trial judge asked

appellant's counsel on two occasions whether there was any reason why the court should not impose the sentence on the terms indicated. Counsel said "no." In other words, even when afforded the opportunity to object, defense counsel never complained that the trial judge had failed to address appellant's sentencing manipulation argument. In these circumstances, we hold that appellant did not preserve his claim that the District Court failed to adequately address his sentencing manipulation argument. We therefore review this claim for plain error. On the record before us, we find no plain error affecting appellant's substantial rights.

We also hold that the District Court did not clearly err in calculating the quantity of the liquids containing PCP that were the subject of the drug transactions. Under the clearly erroneous standard, the District Court's findings of fact are presumptively correct. *In re Sealed Case*, 552 F.3d 841, 844 (D.C. Cir. 2009). On the record before us, we find no basis to overcome this presumption.

## I.  BACKGROUND

### A.  *Summary of the Facts*

In 2012, the Metropolitan Police Department ("MPD") was investigating the sale of PCP in the District of Columbia. That investigation led an undercover MPD officer to contact someone named "Rico," who steered the officer to his "Uncle Jimmy," claiming that Jimmy was Rico's PCP supplier. After failed attempts to contact Jimmy by telephone, appellant Kevin Mack texted the undercover officer and arranged to sell him PCP. On July 23, 2012, appellant sold six vials of liquid PCP to the undercover officer for $1,200. The transaction was video-recorded. A sample of the liquid was submitted to the

Drug Enforcement Administration ("DEA") for analysis and determined to be PCP with a purity of 4.9%.

Appellant and the undercover officer continued to exchange text messages after the first sale. They arranged another sale about a week after their first exchange, but when the MPD officer arrived at the second buy, appellant reported that he did not have the PCP prepared for delivery. A month later, appellant and the undercover officer arranged another meeting. On September 5, 2012, appellant sold six vials of liquid PCP to the undercover officer for $1,800. This transaction was also video-recorded. DEA later determined from a sample of the liquid that it was PCP with a purity of 6.7%.

For several months after the second PCP transaction, MPD deliberated over how to proceed with its investigation. Because the lead officer involved in appellant's case became involved in a different matter, MPD decided to close the case and proceed with prosecution. On May 23, 2013, a grand jury charged appellant with one count of unlawful distribution of a mixture or substance containing PCP, and one count of unlawful distribution of one hundred grams or more of a mixture or substance containing PCP, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iv), (b)(1)(C).

**B.** *The Proceedings Before the District Court*

On April 30, 2014 and May 31, 2014, appellant filed motions to dismiss on the grounds of entrapment and selective prosecution. The District Court denied these motions. *United States v. Mack*, 53 F. Supp. 3d 179 (D.D.C. 2014). The court ruled that no government agents "engaged in persuasive overtures" in soliciting appellant, "beyond those ordinarily present in drug transactions." *Id.* at 188. The court also found

that the government "did not solicit the Defendant directly," and noted that the first sale "was initiated by the Defendant . . . out of his own volition." *Id*. Regarding the second PCP sale, the court noted that, although it "resulted from a series of text messages between the undercover officers and the Defendant," there was "no evidence" of "persuasive overtures" by MPD officers or "any reluctance" on the part of appellant. *Id*. The court additionally found that appellant had not provided any "factual predicate or evidentiary foundation" for his entrapment argument. *Id*.

Finally, the court rejected appellant's claim of selective prosecution. On this claim, the court found that appellant had "not put forth a shred of evidence even hinting at the existence of a discriminatory purpose behind the decision to prosecute him." *Id*.

On July 21, 2014, appellant entered a guilty plea to Count One of the indictment. The plea agreement provided that the parties' dispute over the drug quantity with respect to the relevant conduct would be resolved by the court as part of the sentencing procedures.

### 1. The Drug Quantity Hearing

Before sentencing, the District Court held a hearing at which the prosecution offered evidence to support its calculation that the relevant drug quantity was 222 grams. The Government's Brief to this court accurately describes the testimony and evidence that was received by the District Court:

> Officer Cardinal . . . stated that liquid PCP has a "distinct chemical odor," typically a yellow or amber tint, and often contains engine starter fluid.

[He] explained [that when] . . . more than one ounce is obtained by MPD, it uses a process called "remediation" wherein it submits only one ounce from the larger sample to DEA. First, each separate vial is weighed on a calibrated scale. Next, each vial is tested with a field-test kit to determine if it has a reaction for PCP. Thereafter, the liquid in all the vials is emptied into a beaker and weighed together. The weight of the beaker is subtracted from that amount to get the weight of the liquid substance. Finally, a one-ounce sample is taken from the liquid mixture and sent to DEA. The remaining substance is sent to MPD's evidence collection division for destruction. MPD officers document all of these steps with photographs. Officer Cardinal testified that he takes these steps because DEA [will] . . . only receive a maximum of one ounce of liquid PCP, due to its volatility.

    . . . .

Regarding the transaction on July 23, 2012, Officer Cardinal introduced photographs showing the four half-ounce vials and two one ounce vials that the undercover officer had purchased from appellant, the positive field tests for PCP from each vial, and the other steps in the remediation process. All six vials contained liquid that was consistent in odor and color with liquid PCP. The Officer testified that the liquid PCP purchased from appellant on July 23 weighed 87.6 grams, without any packaging. One ounce (25.4 grams) was sampled from this mixture, secured in appropriate packaging, and sent to DEA's Mid-Atlantic Laboratory. That sample was tested by

DEA and shown to contain PCP, with a 4.9% purity.

Regarding the transaction on September 5, 2012, Officer Cardinal introduced photographs showing the six one-ounce vials that the undercover officer had purchased from appellant, the positive field tests for PCP from each vial, and the other steps in the remediation process. All six vials contained liquid that was consistent in odor and color with liquid PCP. The Officer testified that the liquid PCP purchased on September 5 weighed 133.4 grams, without any packaging. One ounce (25.1 grams) was sampled from this mixture, secured in appropriate packaging, and sent to DEA's Mid-Atlantic Laboratory. That sample was tested by DEA and shown to contain PCP, with a 6.7% purity.

Investigator Derek Starliper testified that he was part of the team that secured the liquid PCP purchased from appellant. . . . [H]e took physical custody of the vials from the undercover officer, packaged and labeled them, deposited them into the MPD evidence room, retrieved them for remediation by Officer Cardinal, and then submitted the sample produced from the remediation process to DEA.

Br. for Appellee 6–9 (citations omitted).

Appellant offered no evidence at the hearing. Instead, appellant submitted a Memorandum in which he questioned the reliability of the measurements and field tests conducted by MPD; argued that only the amount of drugs actually

measured and tested by DEA should be used to calculate the relevant drug quantity; and also argued that the alleged weight of the liquid PCP from the second transaction should not be included in the relevant drug quantity because the DEA chemist did not testify at the hearing.

On May 14, 2015, the District Court issued an order finding that MPD "followed sufficiently reliable procedures when they handled and measured the weight of the drug evidence" and proved the relevant drug quantity beyond a preponderance of the evidence. Memorandum & Order at 10–11, *United States v. Mack*, No. 13-cr-0150 (D.D.C. May 14, 2015), Supplemental Appendix ("S.A.") 57–58. The District Court found no merit in appellant's argument that the court should consider only the drug quantity sent to DEA. *Id.* at 8–9, S.A. 55–56. The court pointed out that drug sampling procedures that were followed in this case were approved in *United States v. Sheffield*, 842 F. Supp. 2d 227, 228–29 & n.2 (D.D.C. 2012), as well as *United States v. McCutchen*, 992 F.2d 22 (3d Cir. 1993), and *United States v. Self*, 681 F.3d 190 (3d Cir. 2012). *Id.* at 8–9, S.A. 55–56.

### 2. The Sentencing Hearing

Prior to sentencing, appellant filed a Memorandum requesting a "time-served" sentence. Appellant argued that he had been convicted in Maryland and was likely to be imprisoned there for five years or more; he was selectively prosecuted; he was solicited by police and the September 5, 2012, transaction was engineered to increase the drug quantity amount; and he was inappropriately prosecuted in federal court instead of D.C. Superior Court. Appellant also submitted separate written objections to the calculation of his Sentencing Guidelines range in the Presentence Report, again

asserting that the court should consider only the drug quantity sent to DEA.

During the sentencing hearing, the District Court listened to arguments from appellant's counsel and the prosecutor. The prosecutor explained to the court that appellant had not been selectively prosecuted, but rather that there was not sufficient evidence to proceed against other parties. The District Court addressed this point in noting that "many of the individuals caught up in the PCP investigation that resulted in the instant matter did not face justice." Tr. of Sentencing Hearing at 23, S.A. 159. The District Court also addressed appellant's argument that he was arbitrarily prosecuted in federal court. The trial judge asked the prosecutor: "[I]n this particular case, what [were] the driving factors that resulted in it being brought here rather than in superior court?" *Id.* at 15, S.A. 151. The prosecutor pointed to the amount of drugs and appellant's criminal history. *Id*. at 15–16, S.A. 151–52.

The District Court imposed a 77-month term of incarceration and 36 months of supervised release, which would run concurrently with any sentence appellant served in his Maryland case. The court reviewed the sentencing factors in 18 U.S.C. § 3553(a), noting that the offense was "serious, PCP is a tremendously dangerous and destructive substance" and discussing appellant's "tremendously long criminal history," which included "repeated criminal convictions," showing "that he is not easily deterred." Tr. of Sentencing Hearing at 23, S.A. 159. The court also stated that appellant had been unsuccessful on repeated attempts at supervised release. The court rejected appellant's request for a time-served sentenced because appellant had appealed his Maryland case and the court needed to "ensure[] the public's protection" if appellant was successful in that appeal. *Id.* at 24, S.A. 160.

There is nothing in the record, however, to indicate that the trial judge addressed appellant's sentencing manipulation argument during the sentencing hearing. Appellant raised this claim in his written Memorandum before sentencing and again during defense counsel's oral presentation at sentencing. But the trial judge never explicitly commented on appellant's request for mitigation on the ground of sentencing manipulation.

Although the trial judge did not expressly address sentencing manipulation during the course of sentencing, defense counsel declined two opportunities to object to the sentencing judge's statement of reasons. After reciting his statement of reasons for appellant's sentence, the trial judge said:

> I will now indicate the sentence to be imposed, but counsel will have one more opportunity to make any legal objections on the factors I have considered before I impose the sentence. Any further legal objections?

*Id.* at 25, S.A. 161. Defense counsel replied "[n]o, Your Honor." *Id.* Then, after announcing appellant's sentence and explaining the terms of his supervised release, the District Court again asked "Counsel, any reason that I should not impose the sentence other than those previously argued as just stated?" and defense counsel replied "[n]o, Your Honor." *Id.* at 27–28, S.A. 163–64.

## II. ANALYSIS

### A. *Standard of Review*

Following the Supreme Court's decisions in *United States v. Booker,* 543 U.S. 220 (2005), and *Gall v. United States*, 552 U.S. 38 (2007), appellate courts review sentences under an abuse-of-discretion standard and set aside sentences found to be "unreasonable." *Booker,* 543 U.S. at 261–63; *Gall,* 552 U.S. at 51.

This review proceeds in two steps. First, the appellate court must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence— including an explanation for any deviation from the Guidelines range." *Gall,* 552 U.S. at 51. "In applying the clearly erroneous standard, an appellate court must remain mindful that judicial findings of fact are presumptively correct." *In re Sealed Case*, 552 F.3d at 844 (citations and internal quotation marks omitted). Second, the appellate court reviews the substantive reasonableness of the sentence under an abuse-of-discretion standard. *Id.*; *see also United States v. Gardellini,* 545 F.3d 1089, 1092–93 & n.2 (D.C. Cir. 2008). This case involves only the first step.

When a party fails to preserve a procedural challenge to his sentence, we review for plain error. *See Locke*, 664 F.3d at 357 ("The more demanding plain error standard of review applies where a defendant fails to raise a claim at his sentencing hearing or fails to object to a district court's ruling."); *United States v. Akhigbe*, 642 F.3d 1078, 1085

(D.C. Cir. 2011) ("[O]ur review is for plain error because . . . [the defendant] failed in the district court to object to the adequacy of that court's reasoning.").

"To overturn a district court's decision under plain error review, we must find that there is (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are satisfied, we have discretion to remedy the error only if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Baldwin*, 563 F.3d 490, 491 (D.C. Cir. 2009) (citations, brackets, and internal quotation marks omitted). To affect substantial rights, the defendant must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (citation and internal quotation marks omitted).

## B.  *Appellant's Procedural Challenges*

As noted above, a district court judge must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c) (2012). The sentencing judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The judge need not recite "a full opinion in every case," and the length and depth of the judge's explanation "depends upon circumstances." *Rita*, 551 U.S. at 356. The guiding principle is that "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.*

Part of the sentencing judge's obligation under 3553(c) is to respond to a defendant's "nonfrivolous reasons for

imposing a different sentence." *Id.* at 357. When a defendant advances nonfrivolous arguments, "the judge will normally go further and explain why he has rejected those arguments." *Id.* If the sentencing judge gives such an explanation, "we generally presume that he adequately considered the arguments and will uphold the sentence if it is otherwise reasonable." *Locke*, 664 F.3d at 358. By contrast, if the sentencing judge fails to respond to a nonfrivolous argument, the presumption of adequate consideration is rebutted. *See United States v. Bigley*, 786 F.3d 11, 14 (D.C. Cir. 2015).

Appellant argues that "the record of the sentencing procedures includes no explanation by the district judge for not agreeing with, or even considering" several of his arguments for a below-Guidelines sentence. Br. for Appellant 9. Specifically, appellant claims that the District Court did not consider the arguments that he was "selectively prosecuted," that he was arbitrarily prosecuted in federal court (and not state court), and that the officers "solicited a second PCP transaction, in order to enlarge the guideline sentencing range." *Id.* at 8.

The record largely contradicts those assertions. As discussed in detail in the Background section, the trial judge afforded appellant ample opportunities to air his concerns about sentencing; he explicitly addressed appellant's selective and arbitrary prosecution arguments; he sought clarifications and explanations from the prosecutor; and he offered a carefully reasoned judgment for his sentencing decision. The judge's only omission was his failure to explicitly address appellant's sentencing manipulation claim.

Prior to our 2015 decision in *Bigley*, there was uncertainty in our Circuit about whether sentencing manipulation was even a plausible argument for a reduced

sentence. *See United States v. Oliveras*, 359 Fed. App'x 257, 261 n.5 (2d Cir. 2010) (summary order) ("Our sister Circuits have adopted widely different positions on the availability of the sentencing manipulation and sentencing entrapment doctrines. . . . [T]he D.C. Circuit has strongly suggested that it would not recognize either doctrine."). However, as we explained in *United States v. McKeever*, 824 F.3d 1113, 1123 (D.C. Cir. 2016), the "law of the circuit is now clear that a defendant may raise a mitigation argument resting on sentencing entrapment to request a downward variance in his sentence."

"Sentencing manipulation occurs when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation and, thus, increasing the drug quantities for which the defendant is responsible." *United States v. Torres*, 563 F.3d 731, 734 (8th Cir. 2009); *see also Bigley*, 786 F.3d at 15 (recognizing sentencing manipulation where an "officer ma[de] multiple drug buys from the defendant before finally arresting him"). In slight contrast, sentencing entrapment occurs "if the government induces a defendant to commit a more serious crime when he was predisposed to commit a less serious offense." *United States v. Walls*, 70 F.3d 1323, 1329 (D.C. Cir. 1995). We have recognized both sentencing manipulation and sentencing entrapment, and a district court is obligated under 3553(c) and *Rita* to respond to those arguments. *Bigley*, 786 F.3d at 14 ("When a district court confronts a nonfrivolous argument for a sentence below the relevant guideline range, it must consider it." (citing *Locke*, 664 F.3d at 357)).

In this case, defense counsel advanced a sentencing manipulation argument, albeit with little clarity. It would have helped if counsel had cited *Bigley*, which was published

before appellant's sentencing proceeding, and before defense counsel filed his Memorandum in Aid of Sentencing. Nevertheless, counsel did raise a vaguely discernable sentencing manipulation argument in writing and orally.

In his written Memorandum, defense counsel argued that "'time served' would be an appropriate sentence" because, among other reasons, "the second transaction (on 9/05/12) has served no other purpose than to enhance the drug quantity amount on which the Court will base its sentence." Defendant's Memorandum in Aid of Sentencing 3–4 (June 26, 2015), Appendix for Appellant 21–22. At the sentencing hearing, defense counsel argued further that

> Mr. Mack was, for lack of a better term, lured into a second transaction and the net result of that transaction, it didn't further the investigation, it didn't result in any major breakthrough for the law enforcement. All it did was put Mr. Mack in a position of having a greater sentence than if he had been arrested within a short time following his first offense . . . .

Tr. of Sentencing Hearing at 12, S.A. 148. And on appeal, defense counsel again alleged that "the MPDC officers had solicited a second PCP transaction, in order to enlarge the guideline sentencing range." Br. for Appellant 8. Nevertheless, the transcript of the sentencing hearing shows that the District Court did not recognize or consider this argument at sentencing.

Prior to sentencing, the District Court gave careful consideration to an argument closely related to appellant's sentencing manipulation argument. In defense counsel's motion to dismiss the indictment, counsel argued that the undercover officers "induced the defendant's participation in

the PCP-for-money transaction on September 5, 2012 for the sole purpose of exposing the defendant to additional penal sanctions." Omnibus Motion to Dismiss Indictment; to Compel Discovery; For a Severance of Counts; and, For a Bill of Particulars at 2, *United States v. Mack*, No. 13-cr-0150 (D.D.C. May 31, 2014). The District Court rejected this argument in a published opinion denying the motion to dismiss. *Mack*, 53 F. Supp. 3d 179. The court found that

> the second drug sale, which resulted from a series of text messages between the undercover officers and the Defendant, does not amount to inducement as there is no evidence that the Government's requests were accompanied by persuasive overtures or that the Defendant displayed any reluctance in consummating the transaction. The Defendant has not provided the factual predicate or evidentiary foundation necessary to meet his initial burden of showing government inducement.

*Id.* at 188 (citation omitted). The defendant's sentencing manipulation claim is essentially identical to his inducement claim: both allege that MPD officers improperly induced the second drug sale.

Of course, the District Court's prior consideration of appellant's sentencing manipulation argument is not a perfect substitute for explicit recognition at the sentencing proceeding itself. We have previously explained that sentencing judges "must adequately explain the chosen sentence . . . not only for the defendant but also for the public to learn why the defendant received a particular sentence." *In re Sealed Case*, 527 F.3d 188, 193 (D.C. Cir. 2008) (citation and internal quotation marks omitted). Prior consideration of an argument in an earlier written opinion does less to adequately explain a

particular sentence than an explanation during the sentencing proceeding itself. However, the District Court's prior written opinion at least confirms that the court considered all of the "nonfrivolous reasons" asserted for a lesser sentence. *Rita*, 551 U.S. at 357. Indeed, the record reveals that the trial judge was consistently attentive to the concerns raised by appellant. And there is more to be taken into account with respect to the trial judge's handling of sentencing.

In *Locke*, we stressed the importance of affording a defendant an "opportunity to object to the district court's sentencing determination at sentencing." 664 F.3d at 357. There is no claim here that appellant was denied an opportunity to pursue his sentencing manipulation claim at sentencing. It is unclear why defense counsel failed to raise an objection when the District Court never mentioned appellant's sentencing manipulation argument. It may be that counsel recalled the judge's opinion denying appellant's motion to dismiss, in which the court rejected appellant's claim that he had been "induced" by police officers to engage in the unlawful drug sales. Counsel may have decided that it would be fruitless to raise even a variation of the "inducement" argument again. In any event, it is clear that defense counsel did not object when the trial judge set forth the reasons supporting the sentencing decision without explicit reference to sentencing manipulation.

The alleged error raised by appellant in this appeal is the District Court's failure to address his sentencing manipulation argument at sentencing. However, that alleged error was muted when the trial judge asked defense counsel near the conclusion of sentencing whether he had "[a]ny further legal objections[.]" Tr. of Sentencing Hearing at 25, S.A. 161. In other words, before rendering his final judgment on sentencing, the trial judge essentially asked defense counsel

"have I missed anything?" And the judge queried defense counsel *twice*, and each time counsel said "No, Your Honor." Any protest of the alleged error was therefore forfeited.

When a defendant fails to raise objections at sentencing, we review only for plain error. *United States v. Warren*, 700 F.3d 528, 531 (D.C. Cir. 2012). As the Supreme Court has explained, there are good reasons for this rule:

> If a litigant believes that an error has occurred (to his detriment) during a federal judicial proceeding, he must object in order to preserve the issue. If he fails to do so in a timely manner, his claim for relief from the error is forfeited. No procedural principle is more familiar to this Court than that a . . . right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.
>
>     . . . .
>
> This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them. That court is ordinarily in the best position to determine the relevant facts and adjudicate the dispute. In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. And of course the contemporaneous-objection rule prevents a litigant from "sandbagging" the court—remaining silent about

his objection and belatedly raising the error only if the case does not conclude in his favor.

In federal criminal cases, Rule 51(b) tells parties how to preserve claims of error: "by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Failure to abide by this contemporaneous-objection rule ordinarily precludes the raising on appeal of the unpreserved claim of trial error. Rule 52(b), however, recognizes a limited exception to that preclusion. The Rule provides, in full: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

*Puckett v. United States*, 556 U.S. 129, 134–35 (2009) (citations and internal quotation marks omitted).

On the record before us, we can find no basis upon which to overturn the judgment of the District Court. The trial judge gave appellant's counsel two opportunities to contest the proposed sentencing decision before sentence was pronounced. Trial judges often are pressed with a long litany of claims during sentencing, so it may happen that a judge inadvertently fails to address a claim that a defendant believes to be of consequence. In these circumstances, if a trial judge – as in this case – asks defense counsel whether there are any further objections to sentencing, it is incumbent upon counsel to voice any concerns regarding matters that counsel believes have not been addressed by the judge. As the Supreme Court said in *Puckett*, this contemporaneous-objection rule prevents a litigant from "sandbagging" the trial judge.

Because appellant forfeited his objection that the trial judge erred in failing to address his sentencing manipulation argument, we review the objection pursuant to the plain error standard. As the Supreme Court makes clear in *Puckett*, plain error review does not mean that a defendant cannot prevail on a challenge to a sentencing decision. *See, e.g.*, *United States v. Brown*, 808 F.3d 865 (D.C. Cir. 2015) (vacating a sentence and remanding for resentencing because the appellate court was unable to discern the sentencing judge's rationale for imposing an above-Guidelines sentence); *United States v. Burroughs*, 613 F.3d 233 (D.C. Cir. 2010) (vacating a plainly erroneous condition of supervised release). Plain error review simply means that the standard of review is very stringent and the likelihood of prevailing on appeal is greatly diminished. In applying Rule 52(b), we will vacate a plain error only if it impinges upon the defendant's "substantial rights," FED. R. CRIM. P. 52(b), in a way that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," *United States v. Olano*, 507 U.S. 725, 736 (1993) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). On the record before us, we cannot find that appellant's substantial rights have been affected.

"A sentencing error affects substantial rights when there is a reasonable likelihood it impacted the sentence." *Burroughs*, 613 F.3d at 245. In light of the District Court's decision denying appellant's motion to dismiss the indictment, it is implausible to think that the error in this case impacted appellant's sentence. The District Court's decision in *Mack* clearly rejected appellant's "inducement" claim, *see Mack*, 53 F. Supp. 3d at 188, and that claim is essentially the same as appellant's sentencing manipulation argument. The decision in *Mack* has not been contested, and for good reason. In our view, the District Court's findings, reasoning, and judgment in *Mack* are eminently sound.

**C.** *Drug Weight Calculation*

Finally, appellant argues that the District Court erred in calculating the drug weight attributable to him. He argues that the procedure used by MPD and DEA is not a "legally satisfactory proof of drug quantity." Br. for Appellant 12. We review the District Court's determination of drug quantity relevant for sentencing under a clear error standard. *United States v. Burnett*, 827 F.3d 1108, 1120 (D.C. Cir. 2016). There was no error here.

After defense counsel called for an evidentiary hearing to determine the drug quantity for which appellant would be accountable, the District Court heard testimony from the officers who processed the PCP that appellant sold to the undercover officer. As detailed above, the officers testified and introduced photographs showing that after they seized multiple vials containing clear liquid in Mack's possession, they field tested each vial for PCP. Then, the officer calibrated a scale, combined all of the liquid PCP into a beaker, and weighed the aggregate PCP. Next, the officer removed a one-ounce sample from the aggregated liquid PCP in the beaker, packaged it, and sent it to the DEA's Mid-Atlantic lab for testing. The officer used this same methodology to process the vials from both the first and second drug sales. The District Court credited this testimony and evidence in upholding MPD procedures. This was not clear error.

Defense counsel claims that appellant should only be accountable for the two one-ounce samples (roughly 50 grams) sent to the DEA's lab, and not for the aggregate quantity of PCP in the vials field tested and weighed by MPD. The District Court rejected this argument after the evidentiary hearing. Appellant's sole challenge to this finding is that

MPD's testing procedures were not authorized by 28 CFR § 50.21, which appellant claims governs only DEA's drug testing procedures. Br. for Appellant 11–12. This argument misses the mark. MPD's drug processing procedures do not need to be authorized by any federal regulations to provide valid, satisfactory proof of drug quantity. *See McCutchen*, 992 F.2d at 25–26 (upholding processing technique to determine drug quantity for sentencing where the government extrapolated from a test sample).

"A district court makes findings of drug quantities under a preponderance of the evidence standard." *Burnett*, 827 F.3d at 1120 (citing *United States v. Fields*, 325 F.3d 286, 289 (D.C. Cir. 2003)). Appellant has not raised, nor do we perceive, any error with the District Court's calculation of PCP attributable to appellant.

### III. CONCLUSION

For the reasons set forth above, we affirm the judgment of the District Court.