# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 18, 2018　　　　　Decided May 1, 2018

No. 17-3039

UNITED STATES OF AMERICA,
APPELLEE

v.

JOHN HAN LEE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cr-00081-1)

*A.J. Kramer*, Federal Public Defender, argued the cause and filed the briefs for appellant.

*Luke M. Jones*, Assistant U.S. Attorney, argued the cause for appellee.  With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman*, *Nicholas P. Coleman*, and *Michael K. Atkinson*, Assistant U.S. Attorneys.

Before: HENDERSON, ROGERS, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Circuit Judge* HENDERSON joins.

2

Dissenting opinion filed by *Circuit Judge* ROGERS.

KAVANAUGH, *Circuit Judge*:  When a defendant enters into a plea agreement with the Government, the defendant may agree to waive the right to appeal the sentence.  At the defendant's subsequent plea hearing, the district court must ensure that the defendant understands that appeal waiver.  In particular, Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure requires the district court, at the plea hearing, to "determine that the defendant understands" the "terms of any plea-agreement provision waiving the right to appeal" the defendant's sentence.

Suppose that a defendant agrees to plead guilty and signs a written plea agreement that waives the right to appeal the sentence.  But then the district court, in violation of Rule 11, fails to discuss the appeal waiver at the plea hearing.  On appeal, do we still enforce the appeal waiver?

This Court has not yet decided how a district court's failure to comply with Rule 11(b)(1)(N) affects the validity of an appeal waiver.  The text of Rule 11(h) guides our analysis. Rule 11(h) provides that a Rule 11 error must be deemed harmless if the error did not affect the defendant's "substantial rights."  A Rule 11(b)(1)(N) error at the plea hearing does not affect the defendant's substantial rights if the defendant still knowingly, intelligently, and voluntarily waived the right to appeal.  To determine whether the defendant knowingly, intelligently, and voluntarily waived the right to appeal, the court of appeals must examine the entire record, including both the written plea agreement and the plea hearing.

In this case, defendant John Han Lee entered into a written plea agreement with the Government.  In the plea agreement, Lee waived his right to appeal a sentence that was within or

below the applicable Guidelines range. At Lee's subsequent plea hearing, the District Court did not discuss the appeal waiver. Lee pled guilty and was later sentenced to a within-Guidelines sentence of 18 months in prison, to be followed by three years of supervised release. He has appealed his sentence.

After examining the entire record, we conclude that Lee knowingly, intelligently, and voluntarily waived the right to appeal his within-Guidelines sentence. We therefore enforce the appeal waiver and dismiss Lee's appeal.

I

In 2013, John Han Lee entered into a written plea agreement with the Government. Under the terms of the plea agreement, Lee agreed to plead guilty to one count of bribery of a public official and one count of conspiracy to commit bank fraud. The plea agreement included the following appeal waiver:

> Your client is also aware that the parties' calculation of the sentencing range under the Sentencing Guidelines is not a promise of the sentence to be imposed on him and is not binding on the Court. Knowing that, your client waives the right to appeal his sentence or the manner in which it was determined pursuant to 18 U.S.C. § 3742, except to the extent that (a) the Court sentences your client to a period of imprisonment longer than the statutory maximum, (b) the Court departs upward from the applicable Sentencing Guidelines range pursuant to the provisions of U.S.S.G. §§ 5K2, or (c) the Court imposes a period of incarceration above the guidelines range for a total offense level of 25 based on a Criminal History Category I. . . . In agreeing to this waiver, your client is aware that his sentence has not

yet been determined by the Court. Realizing the uncertainty in estimating what sentence the Court will ultimately impose, your client knowingly and willingly waives his right to appeal the sentence, to the extent noted above, in exchange for the concessions made by this Office in this Plea Agreement.

Lee signed the plea agreement. The agreement stated that Lee had read and understood the agreement, that he had discussed it with his counsel, and that he was entering into the agreement "without reservation," "voluntarily," and of his "own free will." The agreement also stated that Lee was "satisfied" with his counsel's services. Lee's counsel – who was an experienced criminal defense attorney – also signed the plea agreement, affirming that he had "fully" discussed the agreement's provisions with Lee. App. 35.

Lee then pled guilty before a magistrate judge. At the plea hearing, Lee stated that he had attended college for a few years. The magistrate judge asked Lee to confirm that he had "completely and thoroughly discussed" the plea with his counsel. Lee said that he had. Lee also said that he was satisfied with his counsel's services. Lee confirmed that he had read the written plea agreement "very carefully" and that his signature indicated his acceptance of the agreement's terms. Finally, the magistrate judge asked Lee if he had any questions about the plea agreement. Lee said that he did not. App. 39-42.

The magistrate judge did not question Lee about the appeal-waiver provision and, indeed, never mentioned the appeal-waiver provision. Lee's counsel did not object to the magistrate judge's failure to discuss the appeal-waiver provision.

At the end of the plea hearing, the magistrate judge determined that Lee was pleading guilty knowingly and voluntarily. The magistrate judge therefore recommended that the District Court accept Lee's plea. The District Court in turn accepted the plea.

The District Court later sentenced Lee to a within-Guidelines sentence of 18 months of imprisonment and three years of supervised release.

Lee has appealed his sentence, asking us to vacate most of the conditions of supervised release. Because we conclude that Lee waived his right to appeal his sentence, we dismiss the appeal.

II

We must decide whether to enforce the appeal waiver contained in Lee's written plea agreement. We have held that a "waiver of the right to appeal a sentence is presumptively valid and is enforceable if the defendant's decision to waive is knowing, intelligent, and voluntary." *In re Sealed Case*, 702 F.3d 59, 63 (D.C. Cir. 2012). An appeal waiver is knowing, intelligent, and voluntary if the defendant "is aware of and understands the risks involved" in waiving the right to appeal. *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009).

To help ensure that a defendant's appeal waiver is knowing, intelligent, and voluntary, Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure requires the district court, at the plea hearing, to "inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal" the defendant's sentence.

Here, Lee signed a written plea agreement with the Government in which he waived his right to appeal a within- or below-Guidelines sentence. At the plea hearing, however, the magistrate judge failed to discuss the appeal waiver. That was error under Rule 11(b)(1)(N). The question is: What are the consequences of that error?

One might argue that a court of appeals should *automatically* deem an appeal waiver not knowing, intelligent, and voluntary if the district court failed to discuss the appeal waiver at the defendant's plea hearing. But no court of appeals has adopted that automatic approach. That is not a surprise, because the problem with such an approach is evident. When the defendant knowingly, intelligently, and voluntarily waives the right to appeal, it makes little sense to deem the appeal waiver not knowing, intelligent, and voluntary merely because it was not mentioned at the plea hearing. Moreover, such an automatic approach would grant a windfall to the defendant. In a plea agreement, the defendant obtains certain benefits, and the Government obtains certain benefits. One of the benefits the Government sometimes bargains for is the defendant's waiver of the right to appeal the sentence. When the defendant knowingly, intelligently, and voluntarily waives the right to appeal but later can still appeal because of a technical violation at the plea hearing, the Government loses that benefit, and the defendant obtains a windfall.

Rule 11 deals with those concerns. In particular, Rule 11(h) provides that a district court's error in the Rule 11 plea colloquy must be deemed harmless if the error did not affect the defendant's "substantial rights." Fed. R. Crim. P. 11(h). Rule 11(h) thereby helps ensure that "ceremony" is not "exalted over substance." *Id.*, Advisory Committee Notes to 1983 Amendments.

As applied to appeal waivers, Rule 11(h)'s harmless error rule raises the following question: When does a district court's error in failing to discuss an appeal waiver during a plea hearing affect a defendant's "substantial rights"? The answer is straightforward: The district court's error – failure to mention the appeal waiver at the plea hearing – cannot possibly be said to have affected the defendant's substantial rights if the defendant still knowingly, intelligently, and voluntarily waived the right to appeal. Conversely, a defendant's substantial rights are affected by a district court's failure to discuss the appeal waiver at the plea hearing if the defendant did not knowingly, intelligently, and voluntarily waive the right to appeal.[1]

To determine whether the defendant knowingly, intelligently, and voluntarily waived the right to appeal, the court of appeals must analyze the entire record. *See United States v. Laslie*, 716 F.3d 612, 616 (D.C. Cir. 2013) (appeals court examines entire record to determine whether an appeal waiver is knowing, intelligent, and voluntary); *cf. United States v. Vonn*, 535 U.S. 55, 59 (2002) (appeals court may consult entire record when considering effect of Rule 11 error on substantial rights). A written plea agreement in which the defendant waives the right to appeal is strong evidence that the defendant knowingly, intelligently, and voluntarily waived the right to appeal. Of course, a written plea agreement *on its own* does not end the inquiry. Rather, the court of appeals must

---

[1] Apart from those circumstances, we also will not enforce an appeal waiver if (1) "the defendant makes a colorable claim he received ineffective assistance of counsel in agreeing to the waiver," (2) "the sentencing court's failure in some material way to follow a prescribed sentencing procedure results in a miscarriage of justice," or (3) the sentencing court rests the sentence on "a constitutionally impermissible factor, such as the defendant's race or religion." *United States v. Guillen*, 561 F.3d 527, 530-31 (D.C. Cir. 2009). Lee does not invoke any of those three exceptions to enforcement here.

examine, among other things, the clarity of the written plea agreement, the defendant's signature on the agreement, defense counsel's signature on the agreement, the defendant's statements at the plea hearing, defense counsel's statements at the plea hearing, and the judge's questioning and statements at the plea hearing.[2]

## III

In the District Court, Lee did not object to the Rule 11(b)(1)(N) error that occurred at his plea hearing. As a result,

---

[2] If an appeal waiver is not knowing, intelligent, and voluntary, then a court of appeals has to decide whether the proper remedy is to void the appeal waiver while maintaining the guilty plea, to allow the defendant to withdraw the guilty plea, to give the defendant a choice between those two remedies, or to do something else altogether. This Court has previously voided an invalid appeal waiver while allowing the defendant to preserve his guilty plea. *See, e.g.*, *United States v. Hunt*, 843 F.3d 1022 (D.C. Cir. 2016); *United States v. Kaufman*, 791 F.3d 86 (D.C. Cir. 2015); *United States v. Fareri*, 712 F.3d 593 (D.C. Cir. 2013); *United States v. Godoy*, 706 F.3d 493 (D.C. Cir. 2013). Other federal courts of appeals vary in their approaches to the remedy. *See, e.g.*, *United States v. Borrero-Acevedo*, 533 F.3d 11, 16-19 (1st Cir. 2008); *Tellado v. United States*, 745 F.3d 48, 53-55 (2d Cir. 2014); *United States v. Goodson*, 544 F.3d 529, 539-41 (3d Cir. 2008); *United States v. Manigan*, 592 F.3d 621, 627-28 (4th Cir. 2010); *United States v. Oliver*, 630 F.3d 397, 411-12 (5th Cir. 2011); *United States v. Murdock*, 398 F.3d 491, 496-98 (6th Cir. 2005); *United States v. Sura*, 511 F.3d 654, 658-62 (7th Cir. 2007); *United States v. Frook*, 616 F.3d 773, 777 (8th Cir. 2010); *United States v. Arellano-Gallegos*, 387 F.3d 794, 796-97 (9th Cir. 2004); *United States v. Edgar*, 348 F.3d 867, 870-73 (10th Cir. 2003). The Supreme Court has not addressed the proper remedy for an invalid appeal waiver. *Cf. United States v. Dominguez Benitez*, 542 U.S. 74 (2004) (addressing what a defendant needs to show in order to reverse his conviction due to a Rule 11 error at the plea hearing).

he has the burden to show that the error affected his substantial rights. He must demonstrate that he did not knowingly, intelligently, and voluntarily waive his right to appeal. Lee has not made that showing.[3]

To begin with, the language of the appeal-waiver provision in the written plea agreement was crystal clear. Lee signed the agreement. The agreement stated that Lee had read and "fully" understood the agreement, had discussed it with his counsel, and was entering into the agreement voluntarily.

During the plea process, Lee's counsel was an experienced criminal defense attorney. Lee's counsel also signed the plea agreement and affirmed that he and Lee had "fully" discussed the agreement's provisions. As the Federal Public Defender stated at oral argument in our Court, moreover, it is standard practice for criminal defense attorneys to discuss appeal waivers with their clients when considering plea agreements. *See* Tr. of Oral Arg. at 38:19-39:1 (Court: "Wouldn't Counsel ordinarily discuss the appeal waiver with a Defendant who's signing an agreement?" Mr. Kramer: "I have to say yes, because of course a lawyer is supposed to do that. . . . In how much detail, varies immensely amongst counsel.").

At the plea hearing, Lee orally reaffirmed to the Court that he had read the plea agreement "very carefully," had "completely and thoroughly discussed" the plea deal with his counsel, and did not have any questions about the plea

---

[3] Where, as here, a defendant fails to object to a Rule 11 violation in the district court, our review is for plain error, with the burden on the defendant to show that the error affected his substantial rights. If the error had been preserved in the District Court, our review would be for harmless error, with the burden on the Government to show that the error did not affect substantial rights. *See United States v. Vonn*, 535 U.S. 55, 58-59 (2002).

agreement.  Lee stated, in addition, that he was satisfied with his counsel.

On the other side of the ledger, we find no record evidence suggesting that Lee was confused or somehow misunderstood the appeal-waiver provision of the plea agreement during the plea process.

Lee suggests that the District Court muddied Lee's understanding of the appeal-waiver provision when the court made an overbroad statement *at the later sentencing hearing* that Lee had a right to appeal his sentence.  In so arguing, Lee points to cases where we have declined to enforce an otherwise unambiguous appeal waiver because the district court mischaracterized the waiver *at the plea hearing*.  *See, e.g.*, *United States v. Kaufman*, 791 F.3d 86, 88 (D.C. Cir. 2015); *United States v. Godoy*, 706 F.3d 493, 495-96 (D.C. Cir. 2013).  But Lee's case is different, because "a statement made at the *sentencing hearing*," even if it was misleading, "could not have informed (or misinformed)" his decision to waive his right to appeal, which "was made at the earlier *plea hearing*."  *United States v. Guillen*, 561 F.3d 527, 531 (D.C. Cir. 2009) (emphasis added); *see United States v. Cook*, 722 F.3d 477, 482 (2d Cir. 2013).

In short, we conclude that Lee knowingly, intelligently, and voluntarily waived his right to appeal his sentence.  The District Court's Rule 11(b)(1)(N) error at the plea hearing therefore did not affect Lee's substantial rights.  In so ruling, we emphasize that Rule 11(h)'s harmless error rule "should *not* be read as an invitation to trial judges to take a more casual approach to Rule 11 proceedings. . . . Subdivision (h) makes *no change* in the responsibilities of the judge at Rule 11 proceedings, but instead merely rejects the extreme sanction of

automatic reversal." Fed. R. Crim. P. 11(h), Advisory Committee Notes to 1983 Amendments.

\* \* \*

We conclude that Lee knowingly, intelligently, and voluntarily waived the right to appeal his within-Guidelines sentence. We therefore dismiss Lee's appeal.

*So ordered.*

ROGERS, Circuit Judge, dissenting:  Federal Rule of Criminal Procedure 11 is a "guilty-plea safeguard[]" for the right to appeal, *United States v. Ruiz*, 536 U.S. 622, 631 (2002), a right "fundamental to the protection of life and liberty and therefore a necessary ingredient of due process of law," *Griffin v. Illinois*, 351 U.S. 12, 20 (1956) (Frankfurter, J., concurring). Among the rights of which the district court "must inform the defendant" prior to accepting a guilty plea is "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." FED. R. CRIM. P. 11(b)(1)(N) (enacted as Rule 11(c)(6), effective Dec. 1, 1999). The district court also "must . . . determine that the defendant understands . . . the terms of" this waiver. *Id.*

Rule 11 was amended to include the right to appeal "to reflect the increasing practice of including provisions in plea agreements which require the defendant to waive certain appellate rights." FED. R. CRIM. P. 11, Advisory Committee Notes to 1999 Amendments; *see United States v. Sura*, 511 F.3d 654, 658 (7th Cir. 2007). "[T]he [Advisory] Committee believed it was important to insure that first, a complete record exists regarding any waiver provisions, and second, that the waiver was voluntarily and knowingly made by the defendant." Committee Notes to 1999 Amendments. A Rule 11(b)(1)(N) inquiry is thus of critical importance in ensuring that "[a]n anticipatory waiver — that is, one made before the defendant knows what the sentence will be — is nonetheless a knowing waiver [because] the defendant is aware of and understands the risks involved in his decision." *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009); *see United States v. Arellano-Gallegos*, 387 F.3d 794, 797 (9th Cir. 2004).

Here, the Magistrate Judge who accepted Lee's guilty plea pursuant to a plea agreement, and the district court judge who, by minute order, adopted the Magistrate Judge's recommendation to accept the plea, never informed Lee that he was waiving his right to appeal and to collaterally attack his

sentence. Lee now seeks to challenge certain supervised release conditions in the written judgment of conviction, and the government maintains that his challenge is barred by the appeal waiver in his plea agreement.

The harmless error provision of Rule 11, which, excuses error "not affect[ing] substantial rights," FED. R. CRIM. P. 11(h), was added as a narrow exception aimed at "end[ing] the practice . . . of reversing automatically for any Rule 11 error," *United States v. Vonn*, 535 U.S. 55, 66 (2002); *see* FED. R. CRIM. P. 11(h), Advisory Committee Notes to 1983 Amendments. Where, as here, no objection was made to a failure under Rule 11(b)(1)(N), the defendant must show that the error was plain and affected his substantial rights. *Vonn*, 535 U.S. at 63 (citing *United States v. Olano*, 507 U.S. 725, 736 (1993)). Therefore, the threshold question is whether Lee has demonstrated the failure to inform him as required by Rule 11(b)(1)(N) was error that was plain and affected his substantial rights.

Lee has shown there was error, for the plain text of Rule 11(b)(1)(N) imposes a mandatory requirement on the district court. During the plea colloquy, no mention was made of the plea agreement provision waiving Lee's right to appeal by the Magistrate Judge, or even by the prosecutor or defense counsel. Nor did the Magistrate Judge expressly determine that Lee understood the terms of the waiver provision. Lee has also shown that the error was plain. *See United States v. Shemirani*, 802 F.3d 1, 3 (D.C. Cir. 2015); *Guillen*, 561 F.3d at 531; *United States v. Murdock*, 398 F.3d 491, 497 (6th Cir. 2005); *Arellano*, 387 F.3d at 796. What happened in Lee's case was a "'wholesale'" violation of Rule 11(b)(1)(N), *Murdock*, 398 F.3d at 497 (quoting *Arellano*, 387 F.3d at 797), not merely a technical violation as might fall within the narrow scope of Rule 11(h). So the question is whether Lee has shown that his

substantial rights were affected, and if so, whether the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks and citation omitted). For the following reasons I conclude that there was plain error as to the appeal waiver, and upon reaching the merits of his appeal I conclude that Lee's case must be remanded with regard to the "standard" conditions of his supervised release.

## I.

The Supreme Court has instructed that in seeking reversal of a conviction after a guilty plea on the ground of plain error under Rule 11, the defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Lee does not seek reversal of his conviction but merely to void the appellate waiver provision in order to challenge conditions of his supervised release. This court has yet to apply *Dominguez Benitez* in that context, and the circuit courts of appeal have taken different approaches. *See Shemirani*, 802 F.3d at 3 (collecting cases). For instance, the Third Circuit has held that where

> the defendant does *not seek the reversal of his conviction* (i.e., does not seek to withdraw his guilty plea) but only challenges the validity of his appellate waiver so that he may appeal from his sentence, he is obliged to show a reasonable probability that the Rule 11 error precluded him from understanding that he had a right to appeal and that he had substantially agreed to give up that right.

*United States v. Corso*, 549 F.3d 921, 929 (3d Cir. 2008) (internal quotation marks and citation omitted) (emphasis

added).  Other circuits take the same or a similar approach.  *See e.g.*, *Murdock*, 398 F.3d at 496; *Arellano*, 387 F.3d at 797; *see also United States v. Burden*, 860 F.3d 45, 53–54 (2d Cir. 2017).  Still other circuits have held that a defendant challenging a Rule 11(b)(1)(N) error who is not seeking reversal of his conviction must still show that he would not have otherwise entered the plea.  *See United States v. Tanner*, 721 F.3d 1231, 1236 (10th Cir. 2013); *United States v. Polak*, 573 F.3d 428, 431 (7th Cir. 2009); *United States v. Borrero-Acevedo*, 533 F.3d 11, 16–18 (1st Cir. 2008).

Interpreting the substantial prejudice standard to emphasize the defendant's understanding of his waiver, as in *Corso*, *Murdock*, and *Arellano*, accords with this court's precedent that the record must show a defendant "knows what he is doing" in waiving the right to appeal.  *Guillen*, 561 F.3d at 530 (internal quotation marks and citation omitted).  Under this approach, a defendant's substantial rights were affected if "there was no functional substitute" for a Rule 11(b)(1)(N) inquiry.  *Murdock*, 398 F.3d at 497; *see Corso*, 549 F.3d at 931; *Arellano*, 387 F.3d at 797.  Even courts requiring a defendant to show he would not have entered his plea have held that "[i]f the safeguard required by Rule 11 is missing, the record must reveal an adequate substitute for it."  *Sura*, 511 F.3d at 662.  A review of the district court record in Lee's case, *see Vonn*, 535 U.S. at 74–76, reveals the "absence of any indication on the record that the defendant understood that he had a right to appeal and that he was giving up that right," *Murdock*, 398 F.3d at 497 (citing *Arellanos*, 387 F.3d at 797).

This court in *Guillen*, while agreeing with our sister circuits that waivers of the right of appeal "generally may be enforced," 561 F.3d at 529, and "[d]rawing upon the experience of sister circuits," identified "some circumstances that may lead a reviewing court not to enforce a pre-sentence

5

waiver," *id.* at 530 (citing decisions from the First, Fourth, Eighth, and Tenth Circuits). For instance, the court explained:

> Nor should a waiver be enforced if the sentencing court's failure in some material way to follow a prescribed sentencing procedure results in a miscarriage of justice. If, for example, the district court *utterly fails to advert* to the factors in 18 U.S.C. § 3553(a), then this court may disregard the waiver and consider the defendant's argument that the district court imposed an unlawful sentence.

*Id.* at 531 (emphasis added). More recently, the court observed that "[i]n order to assure consistent enforceability of waivers of rights in plea agreements, courts conducting plea colloquies must scrupulously adhere to the obligations of Rule 11." *Shemirani*, 802 F.3d at 3. That did not happen in Lee's case.

The court's analysis today focuses on factors other than Lee's understanding of the terms of his waiver of the right to appeal. Although the court acknowledges that a plea agreement itself does not dispose of the inquiry of whether Lee's substantial rights were affected, *see* Op. 7, it nonetheless points to the "clarity of the written plea agreement" along with Lee's and his counsel's signatures on the agreement as additional evidence of the knowing, intelligent, and voluntary nature of the plea, *id.* at 7–8. But these details are all elements of the written plea agreement, and "'[t]he point of Rule 11(b)(1)(N) is that a signed piece of paper is not enough.'" *Corso*, 549 F.3d at 930 (quoting *Sura*, 511 F.3d at 662) (alteration in original).

The court also overstates the role of Lee's "experienced" defense counsel. Op. at 4. The text of Rule 11(b)(1), that "the court must inform the defendant" of the listed information, is

mandatory. "A judge is not relieved of the duty to make the full inquiry required by Rule 11 merely because defense counsel is present at the plea hearing . . . ." 1A Charles Alan Wright & Andrew D. Leipold, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 176, at 200 (4th ed. 2008). Similarly, the court overstates the significance of the response by Lee's appellate counsel to its own question about what defense counsel "ordinarily" advise their clients, Tr. of Oral Arg. at 38 lines 18–25 through 39 lines 1–4 (Jan. 18, 2018), which was not an observation about what transpired in Lee's case. *See* Op. 9. The Magistrate Judge's inquiries to Lee whether he had any questions, *see* Plea Hr'g Tr. at 4 lines 17–24; 6 lines 24–25 through 7 line 1, effectively shifted to Lee and his counsel the responsibility that Rule 11(b)(1)(N) places on the district court.

Further, although Lee responded affirmatively when asked by the Magistrate Judge whether he understood the plea agreement, *see* Plea Hr'g Tr. at 6 lines 11–13, no specific mention was ever made of the waiver of the right to appeal. Instead, the Magistrate Judge advised Lee of some of the rights that he would be waiving by not going to trial — including the right to claim ineffective assistance of counsel, present witness testimony and cross-examine the government's witnesses, and require the trier of fact to find the government had proven his guilt beyond a reasonable doubt, *id.* at 3 lines 19 through 4 line 1 — but "confusingly omitted the right to appeal," *Sura*, 511 F.3d at 662.

In sum, neither the written plea agreement nor defense counsel's statement that he had discussed the plea agreement with Lee, nor anything else in the district court record reveals "any indication" specifically that Lee "understood that he had a right to appeal and that he was giving up that right." *Murdock*, 398 F.3d at 497. Indeed, although not dispositive, *see Guillen*, 561 F.3d at 531, at his sentencing, the district court

judge told Lee that he had the right to appeal his sentence, referred to the date when an appeal had to be filed, and confirmed that Lee understood he had this right. Sentencing Hr'g Tr. at 56:17–23. Neither the prosecutor nor defense counsel attempted to correct the judge's statement, *see United States v. Kaufman*, 791 F.3d 86, 88 (D.C. Cir. 2015); *United States v. Godoy*, 706 F.3d 493, 495–96 (D.C. Cir. 2013), underscoring perhaps the absence of any specific indication that an express determination had been made that Lee had knowingly and voluntarily waived his right to appeal his sentence.

In thereby showing that his substantial rights were affected, Lee has also shown that the error seriously affected the fairness, integrity, and public reputation of our plea proceedings. The district court's "'wholesale failure' to ascertain that [Lee] understood the waiver provision," *Murdock*, 398 F.3d at 498 (quoting *Arellano*, 387 F.3d at 797), cast aside the safeguard in Rule 11(b)(1)(N) and substituted no other. The error is exacerbated by the government's effort to enforce the waiver even though it failed to object to the Magistrate Judge's omission, *see id.* at 498–99, and to the sentencing judge's statement that Lee could appeal his sentence, *see also Guillen*, 561 F.3d at 530–31. Consequently, the appeal-waiver provision in the plea agreement does not bar Lee's appeal of conditions of his supervised release in the written judgment of conviction.

**II.**

It is long settled that the oral sentence announced at the sentencing hearing is controlling. *See United States v. Jackson*, 848 F.3d 460, 465–66 (D.C. Cir. 2017); *Kennedy v. Reid*, 249 F.2d 492, 495 (D.C. Cir. 1957); *United States v. McMillian*, 777 F.3d 444, 451 (7th Cir. 2015); FED. R. CRIM. P. 35(c)

(defining "sentencing" as "the oral announcement of the sentence"). A written judgment may clarify an oral sentence, but "'the written judgment form is a nullity to the extent it conflicts with the previously pronounced sentence.'" *United States v. Love*, 593 F.3d 1, 9 (D.C. Cir. 2010) (quoting *United States v. Booker*, 436 F.3d 238, 245 (D.C. Cir. 2006)). Thus, "[w]hen the two are in conflict, we will order the judgment corrected to conform to the sentence imposed from the bench." *Id.* (citing *United States v. Lewis*, 626 F.2d 940, 953 (D.C. Cir. 1980)).

Lee contends broadly that his case should be remanded to the district court to delete the supervised release conditions that were never mentioned at oral sentencing because the district court judge's statement that he "will impose standard conditions of supervised release" was "insufficient to constitute an oral pronouncement of any particular condition." Appellant's Br. 12. Alternatively, he contends that even if the court does not vacate the 13 "standard" conditions, ten of the 13 "standard" conditions are invalid because they are vague or otherwise invalid for lack of notice or justification.[1] As to his first contention, Lee relies on *Love*, 593 F.3d at 11. In *Love*, this court recognized that "[o]ral pronouncements of supervised release conditions are often worded imprecisely" and emphasized the necessity of considering context when determining whether a written judgment is consistent with an

---

[1] *See generally* Appellant's Br. 16–20 (citing *United States v. Kappes*, 782 F.3d 828, 835–36, 842–48 (7th Cir. 2015); *United States v. Thompson*, 777 F.3d 368, 372–73, 378–79 (7th Cir. 2015) (citing, *inter alia*, Christine S. Scott-Hayward, *Shadow Sentencing: The Imposition of Federal Supervised Release*, 18 BERKELEY J. CRIM. L. 180 (2013))).

oral sentence. *See id*. at 10. There, the court concluded some of the conditions in the written judgment were consistent with the oral sentence, but ordered vacatur of a condition in the written judgment that conflicted with the oral sentence, because it prohibited the defendant from possessing pornography while the more limited condition announced at "sentencing" prohibited patronizing places where pornography could be accessed. *Id.* at 10–11. Even assuming Lee's interpretation of *Love* — that a mere difference between a written judgment and oral sentence warrants remand — may be overbroad, his challenge to the supervised release conditions embraces the narrower principle in *Love* that a *conflict* between a written judgment and oral sentence warrants remand.

Lee contests application of the plain error standard, as the government urges, on the ground that he had no opportunity to object to conditions in the written judgment because he had no knowledge at oral sentencing of the challenged conditions. The Sentencing Guidelines separately identify the "mandatory," "standard," and "special" conditions for supervised release and refer generally to other conditions that may be imposed, subject to two limitations, U.S.S.G. § 5D1.3 (2015 & 2016); defense counsel is presumed to be familiar with the Guidelines, *United States v. Abney*, 812 F.3d 1079, 1089–90 (D.C. Cir. 2016). If there were any confusion or ambiguity, Lee offers no reason why clarification could not have been sought from the sentencing judge on the specific supervised release conditions being imposed. *See United States v. Mack*, 841 F.3d 514, 518, 526 (D.C. Cir. 2016). Even if Lee has the burden of showing plain error, however, this court has acknowledged that his burden to show prejudice is "somewhat lighter in the sentencing context," requiring only "a reasonable likelihood that the sentencing court's obvious errors affected his sentence." *United States v. Saro*, 24 F.3d 283, 288 (D.C. Cir. 1994). This is because the interest in finality is of a lesser

order, given that resentencing is "nowhere near as costly or as chancy an event as a trial." *Id.* at 287–88.

The record shows Lee was substantially prejudiced as a result of the lack of specificity at oral sentencing regarding the "standard" conditions. As the government notes, Appellee's Br. 23 n.3, the 2015 Guidelines were amended prior to Lee's sentencing. Although his plea was entered in 2014, Lee was sentenced on April 26, 2017; the amended Guidelines took effect November 1, 2016. Yet the written judgment of May 8, 2017, imposes the "standard" conditions in the 2015 version of the Guidelines when the Guidelines required that the 2016 version, which was in effect at the time Lee was sentenced, be applied. U.S.S.G § 1B1.11(a) (2015 & 2016); *see United States v. Haipe*, 769 F.3d 1189, 1191 (D.C. Cir. 2014). Inclusion of the 2015 Guidelines' supervisory release conditions in the written judgment was error, and the contextual approach applied in *Love*, 593 F.3d at 10, does not resolve Lee's challenge because there is a conflict between the written judgment and the oral sentence. The district court judge is presumed to have referred to the correct, 2016 Guidelines, *see, e.g.*, *United States v. Kenny*, 846 F.3d 373, 376 (D.C. Cir. 2017), but this version is not reflected in the written judgment. The significance of this conflict is manifest from the discrepancies between the 2015 and 2016 Sentencing Guidelines because the "standard" conditions in the 2016 Guidelines address Lee's vagueness objections to some of the conditions in the written judgment. For example, the 2016 version defines the term "judicial district" to mean the place where the defendant resides while the 2015 Guidelines were unclear, Lee notes, whether the term referred only to the District of Columbia where he entered the plea and was sentenced and not Virginia where he resides. *Compare* U.S.S.G. § 5D1.3(c)(3) (2016) *with id.* § 5D1.3(c)(1) (2015). Additionally, the 2016 Guidelines, unlike the 2015 Guidelines,

define what it means to "work regularly." *Compare id.* § 5D1.3(c)(7) (2016) *with id.* § 5D1.3(c)(5) (2015). The 2016 Guidelines also omit certain "standard" conditions to which Lee also objects, for instance to requirements that he not frequent places where controlled substances are used, distributed, or administered, and not consume excessive alcohol. *Compare id.* § 5D1.3(c)(7) & (8) (2015) *with id.* § 5D1.3(c) (2016).

Because the written judgement subjects Lee to "standard" conditions that have either been clarified or omitted from the 2016 Guidelines, which should have been applied, a remand is required. Lee's challenge to two "special" financial conditions that were not mentioned at "sentencing," contending they must be vacated, is unavailing. There is no difference, much less conflict, between the 2016 and 2015 Guidelines versions of these "special" conditions, *compare* U.S.S.G. § 5D1.3(d) (2016) *with id.* (2015), and Lee offers no basis to conclude that these conditions are not "reasonably related" to the crimes to which he pleaded guilty, or involve a "greater deprivation of liberty than is reasonably necessary," 18 U.S.C. § 3583(d)(1) & (2); U.S.S.G. § 5D1.3(b). Any error due to the failure to mention these two "special" conditions at the sentencing hearing was harmless. *See United States v. Ayers*, 795 F.3d 168, 172, 176 (D.C. Cir. 2015) (citing *Williams v. United States*, 503 U.S. 193, 203 (1992); FED. R. CRIM P. 52(a)). In view of my conclusion that a remand is required, I need not further address Lee's alternative contention on vagueness and invalidity.

Accordingly, I respectfully dissent because Lee's challenge to the supervised release conditions in the written judgment of conviction is not barred by the appellate waiver provision in his plea agreement, and, in view of prejudicial legal error resulting in a conflict between the written judgment

and the oral sentencing, a remand with regard to the "standard" conditions of his supervised release is required, *see Love*, 593 F.3d at 9–11.